**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | Case No. 1305003287 |
| v. | ) | |
| | ) | |
| KHAMIS A. ALDOSSARY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 15, 2014
Decided: April 10, 2014

Monica Simmons, Esquire
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE 19801
　　*Attorney for the State*

James M. Stiller, Esquire
Schwartz & Schwartz, P.A.
1140 South State Street
Dover, DE 19901
　　*Attorney for Defendant*

**DECISION ON DEFENDANT'S MOTION TO SUPPRESS**

On May 5, 2103, Defendant Khamis Aldossary (hereinafter "Defendant") was arrested and charged with the offense of Driving Under the Influence of Alcohol, in violation of 21 *Del. C.* § 4177(a)(1), Driving a Vehicle While License is Suspended or Revoked, in violation of 21 *Del. C.* § 2756(a), and Failure to have Insurance Identification in Possession in violation of 21 *Del. C.* § 2118(p)(1). Defendant filed this motion to suppress alleging that the officer did not have reasonable articulable suspicion to engage in DUI questioning and lack of probable cause to arrest the Defendant. On January 2, 2014, the Court held a hearing on the motion, and reserved decision. After a review of the submitted briefs, applicable law, and record evidence, the Court **DENIES** Defendant's motion to suppress.

# FACTS

The State's only witness at the hearing was Senior Corporal Robert Kunicki (hereinafter "Corporal Kunicki") of the Delaware State Police. Corporal Kunicki testified that on May 5, 2013, at approximately 3:15 a.m., he was on patrol in Newark, New Castle County, when he was dispatched to a single-vehicle accident located at the Interstate 95 Northbound on-ramp at Route 896. Upon arriving at the scene, Corporal Kunicki made contact with an off-duty Delaware State Trooper and an individual later identified as the Defendant. Defendant's car was located off the roadway in a ditch and Defendant told Corporal Kunicki that he had been driving it at the time it drove off the road. Corporal Kunicki testified that at the time of his first encounter with Defendant, he noticed Defendant's eyes were glassy and bloodshot, his speech was slurred, and he detected a strong odor of alcohol from Defendant.

Corporal Kunicki testified that at the time he encountered Defendant, he believed Defendant was under the influence, and thus began an investigation. Due to the conditions of the roadway,[1] Corporal Kunicki had Defendant perform only an alphabet test and a portable breathalyzer test (hereinafter "PBT"). Corporal Kunicki asked Defendant if he knew the alphabet, to which Defendant responded in the affirmative. Corporal Kunicki then had Defendant recite the alphabet starting at the letter E and stopping at the letter P. Corporal Kunicki testified that Defendant failed the test. Next, Corporal Kunicki testified that he administered a PBT to Defendant, and that at the time of the test, the machine was in proper working order.[2] Corporal Kunicki testified that Defendant failed the PBT, and as a result, he placed Defendant under arrest and transported him to Troop 6 for observation.

---

[1] Corporal Kunicki testified that the Defendant's car was located on a blind curve on the on-ramp next to I-95.
[2] Corporal Kunicki testified that he calibrated the machine every other month, and that on the day in question, the machine was calibrated and operating properly because it displayed three zeros.

On cross examination, Corporal Kunicki testified, with respect to Defendant's speech at the time he made contact, he determined Defendant was from the Middle East, but he did not believe Defendant's English language skills were impaired, and he did not believe Defendant's accent could be mistaken for slurring or mumbling. Corporal Kunicki testified even though he has had limited encounters with individuals from the Middle East, his general DUI training provided him with an ability to differentiate between an accent and slurred or mumbled speech. Corporal Kunicki also testified, after confirming his and Defendant's positions at the scene on a map, that although the wind speed as defendant presented at approximately 12.7 miles per hour east-north-east,[3] he was able to detect a strong odor of alcohol from Defendant due to a "scent cone." Finally, Corporal Kunicki further stated that prior to administering the alphabet test, he asked Defendant if Defendant could perform such a test, to which Defendant responded that he could.

After Corporal Kunicki testified, Defendant took the stand. On direct examination, Defendant testified that on May 5, 2013, the weather was windy, such that his shirt moved in the wind. Defendant also testified that the wind was blowing from behind Corporal Kunicki and into Defendant's face. On cross examination, Defendant testified that he stood a maximum of two feet from Corporal Kunicki during their contact.

### PARTIES' CONTENTIONS

Defendant alleges that Corporal Kunicki did not have reasonable articulable suspicion to perform a DUI investigation after Corporal Kunicki's initial contact with Defendant following the single-vehicle accident. Defendant argues that the only factor upon which Corporal Kunicki could base his suspicion is the accident, because Defendant's bloodshot eyes were caused by

---

[3] Measurements taken from Wilmington, Delaware, on May 5, 2013, at 2:51 am.

3

late-night driving; Defendant's alleged slurred speech was associated with Corporal Kunicki's unfamiliarity with accents; and Corporal Kunicki could not have detected the odor of alcohol due to the wind speed and direction at the time of his contact with Defendant. Defendant argues that a single-vehicle accident alone does not provide a basis for an officer to reach reasonable articulable suspicion to begin a DUI investigation.

Defendant also argues that Corporal Kunicki did not have probable cause to arrest him. Defendant argues that, for reasons previously stated, his eyes, speech, and alleged odor cannot give rise to probable cause for an arrest. Defendant also argues that his failure of both the alphabet test and the PBT cannot establish probable cause. This argument is based upon the Court's previous decisions that NISTA has not concluded that there is any correlation between one's ability to recite the alphabet and impairment. He further argues that Corporal Kunicki failed to testify to the proper administration of the PBT. Thus, Defendant argues, the only remaining factor to determine probable cause is the single-vehicle accident, which alone cannot form the basis of probable cause to arrest. Defendant argues that his arrest was improper, and all evidence obtained as a result must be suppressed.

Conversely, the State alleges that Corporal Kunicki did have probable cause to arrest Defendant. The State argues that Corporal Kunicki arrested Defendant after being dispatched to Defendant's single-vehicle accident, observing his bloodshot, glassy eyes, his slurred speech, a strong odor of alcohol, and Defendant's failures on the alphabet test and PBT. The State argues that even though Defendant attempts to rely upon wind speed and direction to eliminate the alcohol odor from the list of factors, Corporal Kunicki could have still detected the odor, because Defendant failed to produce any evidence outlining the effects of wind on the dissipation of odor, and because Defendant and Corporal Kunicki were in close proximity to each other when

4

Corporal Kunicki detected the odor. The State additionally argues that Corporal Kunicki did not perform any other tests due to the location of Defendant on the I-95 on-ramp, which had a blind curve. The State argues that under the totality of the circumstances test, Corporal Kunicki had probable cause to arrest Defendant.

## ANALYSIS

In a motion to suppress, the State bears the burden to establish probable cause by a preponderance of the evidence.[4] The Court must also determine, after considering the totality of the circumstances, whether the officer had reasonable articulable suspicion to believe that criminal activity had been, or was about to be committed.[5] The Court must give specific weight to each factor considered within the totality of the circumstances and determine if such factors suggest, when viewed by a reasonable police officer, that there exists a fair probability that the defendant committed a crime.[6]

### FACTORS

The Court, before analyzing the factors present under the totality of the circumstances, must first determine if specific factors can even be considered. The Court has already determined that the result of the alphabet test is of little or no value. The Court first considers the results of the PBT.

---

[4] *Bease v. State*, 884 A.2d 495, 498 (Del. 2005); *State v. Mulholland*, 2013 WL 3131642, at *3 (Del. Com. Pl. June 14, 2013).
[5] *Bease*, 884 A.2d at 498 (citing *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993)). "Reasonable suspicion is defined as the officer's 'ability to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonable warrants the intrusion.'" *State v. Babb*, 2012 WL 2152080 (Del. Super. June 13, 2012) (citing *Holden v. State*, 23 A.3d 843, 847 (Del. 2011)(quoting *State v. Henderson*, 892 A.2d 1061, 1064-65 (Del. 2006))).
[6] *Miller v. State*, 4 A.3d 371 (Del. 2010).

Under *State v. Beheler*, this Court held that the results of the PBT will not be given much weight when the State failed to lay a proper foundation.[7] In *Beheler*, "[t]he officer acknowledged that he did not follow standard operating procedures in giving the test to the defendant because he did not observe him for the required period before administering the test. In addition, the State did not present testimony regarding the calibration of the PBT."[8] Similarly, in this matter, Corporal Kunicki testified that he could not remember if he waited for the 15 minute period prior to administering the PBT. Corporal Kunicki testified that the PBT was calibrated every other month, and that he knew the PBT he used was calibrated because the display had three zeros on it. The State did not, however, introduce any documentation supporting his testimony regarding the calibration. A question therefore remains regarding the 15-minute waiting period, and the Court thus affords little weight to the results of the PBT.

The Court next considers Defendant's argument that the wind speed and direction prevented Corporal Kunicki from detecting an odor of alcohol from Defendant. In support of this contention, Defendant produced historical data from the Dover Air Force Base. According to the data, on May 5, 2013, around 3am, the winds near Wilmington, Delaware, were traveling 12.7 miles per hour in an east-north-east direction. Defendant argued that based on the speed, physics would provide that Corporal Kunicki could not possibly have detected the odor of alcohol from Defendant. However, other than the report for winds in a city away from the location of the arrest, Defendant produced no other form of evidence supporting this contention. Corporal Kunicki testified that he was able to detect the odor due to a "scent cone," but did not expand upon this testimony. Both Corporal Kunicki and Defendant confirmed that they were standing in close proximity to each other- there was approximately two feet between them.

---

[7] 2010 WL 2195978, at *4 (Del. Com. Pl. Apr. 22, 2010) (citing *State v. Blake*, 2009 WL 3043964 (Del. Com. Pl. Sept. 24, 2009)).
[8] *Id.*

Defendant produced data for the wrong city, and then proceeded to apply the data using theories of physics that were not bolstered by any form of evidentiary support. Without support for this theory, the Court does not find Defendant's theory persuasive, and the Court will thus give weight to Corporal Kunicki's detection of an alcoholic odor as a factor.

The defense contends that the Court should afford little weight to Defendant's slurred speech, because Defendant's accent could be mistaken for mumbling or slurring. The defense offers no support for this contention, with the exception of defense counsel's own experiences in foreign countries. Corporal Kunicki testified that he was able to differentiate between an accent and slurred speech. Defendant's argument is therefore speculative, and I cannot find that this argument carries any weight.

The defense finally argues that Defendant's bloodshot eyes should not be considered because the investigation took place at 3am and thus everyone's eyes are likely to be bloodshot at that hour. Defendant cites *Mulholland* as support for this argument, because the Court noted the time when describing the defendant's bloodshot eyes.[9] While the Court in *Mulholland* does mention the time, nowhere in that case does the Court specifically note that the time of night was the cause of the defendant's bloodshot eyes. Defendant does not cite to any other cases in support of this argument, even though many of the DUI cases in Delaware involve individuals with bloodshot eyes being investigated in the early morning. The Court will still give weight to the Defendant's bloodshot eyes in this matter.

The Court will thus consider the following factors in its determination of probable cause: 1) single-vehicle accident; 2) odor of alcohol; 3) bloodshot, watery eyes; and 4) slurred and/or mumbled speech.

---

[9] *Mulholland*, 2013 WL 3131642, at *6.

## REASONABLE ARTICULABLE SUSPICION

"A traffic violation combined with odor of alcohol does not alone constitute probable cause to arrest for DUI, but may amount to reasonable suspicion of DUI and justify a request to perform [field] tests.[10]  In this matter, Corporal Kunicki was dispatched to a single-vehicle accident that occurred at approximately 3am.  Upon arriving at the scene, Corporal Kunicki made contact with Defendant, at which time he noticed Defendant's bloodshot, watery eyes, an odor of alcohol, and slurred speech.  Corporal Kunicki testified that he has performed approximately 100 DUI stops per month, and he is therefore able to identify when an individual is likely under the influence of drugs or alcohol.  Corporal Kunicki testified that after making contact with Defendant, it was his opinion that Defendant was under the influence.  Taking into account Corporal Kunicki's experience and the factors presented to him, the Court finds that Corporal Kunicki had reasonable, articulable suspicion that Defendant was under the influence, and therefore he could properly begin a DUI investigation.

## PROBABLE CAUSE

In determining whether probable cause exists in a particular situation, "the police are only required to present facts which suggest that there is a fair probability that the defendant committed the offense."[11]  Additionally, "[t]he possibility that there may be a hypothetically innocent explanation for each of several facts revealed during the course of an investigation does not preclude a determination that probable cause exists for an arrest."[12]

In *Bease v. State*, the Supreme Court affirmed the Superior Court's denial of a motion to suppress.  The Superior Court determined that the following factors were sufficient to establish

---

[10] *Mulholland*, 2013 WL 3131642, at *4; *see Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

[11] *Id.*

[12] *State v. Maxwell*, 624 A.2d at 930 (citing *Jarvis v. State*, 600 A.2d 23, 41-42 (Del. Super. 1991)).

probable cause: 1) abrupt vehicular movement; 2) odor of alcohol; 3) bloodshot, glassy eyes; and 4) admission to drinking.[13] The Superior Court did not weigh the results of the PBT and HGN tests in its probable cause analysis.

Similarly, in *Miller v. State*, the Supreme Court affirmed the Superior Court's denial of a motion to suppress after considering the following factors, and excluding the results of the PBT and HGN test: 1) odor of alcohol from two feet away; 2) glassy, watery eyes; 3) failed walk-and-turn and one-legged standing tests; and 4) the defendant's admission to drinking.[14]

Conversely, in *State v. Mulholland*, this Court found: 1) a traffic violation; 2) admission to drinking; 3) odor of alcohol; 4) bloodshot eyes; and 5) failed one-leg stand test did not establish, under the totality of the circumstances, probable cause for an arrest.[15] The Court in Mulholland took note that the events surrounding the matter occurred on an extremely cold night with snow on the roadway.[16] Such conditions were not present in this matter, and this Court thus contains the *Mulholland* decision to its facts.

The Court will determine whether the factors presented in this matter are sufficient to form the basis of probable cause to arrest. Here, Corporal Kunicki was dispatched to a single-vehicle accident involving a car in a ditch. Upon arriving at the scene, Corporal Kunicki determined that Defendant was driving the vehicle at the time of the accident. Corporal Kunicki observed Defendant's bloodshot, glassy eyes, slurred speech, and detected an odor of alcohol coming from Defendant.

Accordingly, the Court finds that the aforementioned factors do support a finding of probable cause for arrest in this matter. In comparing this matter with previous decisions from

---

[13] *Bease v. State*, 884 A.2d at 498.
[14] *Miller*, 4 A.3d at 374-75.
[15] *Id.* at *6.
[16] *Id.*

Delaware courts, the Court finds that Defendant exhibited similar traits to other defendants who were arrested for DUI. Defendant, like the defendants in both *Bease* and *Miller*, had bloodshot, glassy eyes and smelled of alcohol. Defendant was also involved in a single-vehicle accident- a more severe factor than the "abrupt vehicular movements"[17] observed in *Bease*. In addition, Defendant's speech was noticeably slurred, which was a factor that did not exist in *Bease* and *Miller*. The Court thus finds the factors in this matter comparable to the factors in *Bease* and *Miller* that supported findings of probable cause.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED this 10th day of April 2014**, that Defendant's motion to suppress all evidence derived from Defendant's arrest, including the results of the Intoxilyzer 5000 EN Breathalyzer test, is **DENIED**.

_____
The Honorable Alex J. Smalls
Chief Judge

Khamis-OP  April 2014

---

[17] *Bease v. State*, 884 A.2d at 498.

10