STATE of Delaware, Defendant
Below, Appellant,

v.

Richard MAXWELL, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: April 20, 1993.
Decided: May 21, 1993.

William L. George, Jr., Dept. of Justice, Wilmington, for appellant.

Joseph A. Hurley, Wilmington, for appellee.

HORSEY, WALSH and HOLLAND, JJ.

HOLLAND, Justice:

The defendant, Richard L. Maxwell ("Maxwell"), was indicted by a Grand Jury in New Castle County for the offenses of Vehicular Homicide in the Second Degree and Driving Under the Influence. Maxwell filed a pre-trial motion to suppress the results of a blood alcohol test taken by the State. Maxwell's motion was granted by the Superior Court, on the grounds that the

police lacked probable cause to take a sample of Maxwell's blood for testing.

The issue presented in this appeal by the State is whether the Superior Court erred in granting Maxwell's motion to suppress evidence of the blood alcohol test results. This Court has concluded that the police had probable cause to believe that Maxwell had been driving while under the influence of alcohol and, therefore, to take a sample of Maxwell's blood for testing. Consequently, the evidentiary ruling of the Superior Court is reversed.

### Facts

On August 24, 1991 at 12:14 a.m., several officers from the New Castle County Police Department responded to the report of an accident at Smith Bridge (the "Bridge") on Smith Bridge Road (the "Road") in northern New Castle County. The first police officer to arrive at the scene of the accident was Joseph Nine ("Officer Nine"). Upon his arrival, Officer Nine observed a pickup truck which had overturned on the south side of the Bridge.[1] The truck was located off the Road to the right of the southbound lane. The dead body of a young boy was lying on the southbound lane of travel. There were large amounts of blood around the body of the boy, the overturned truck, and the boulders located to the right of the southbound lane.

Paramedics and fire personnel had reached the accident scene prior to Officer Nine's arrival. Officer Nine was advised by the paramedics that two adults and two juveniles had been transported by ambulance to the hospital. He was further informed that the body lying in the road was that of a third juvenile, who apparently bled to death from a laceration to the neck.

A few minutes later, a second officer, Officer Breitigan, joined Officer Nine at the accident scene. Officer Nine and Officer Breitigan spoke with two civilians who had arrived at the scene moments after the accident. The civilian witnesses were separated and interviewed by the officers. Each witness reported to the police officers that upon arrival at the accident scene, Maxwell had identified himself to them as the driver of the overturned truck. Each witness further recounted that upon asking Maxwell if he had been drinking, he responded, "we were drinking." There was also an indication by at least one of the witnesses that Maxwell had appeared dazed.

Approximately one hour after the arrival of Officers Nine and Breitigan, Officer Kevin Cassidy ("Officer Cassidy"), appeared at the accident scene. Officer Cassidy had been assigned to the Traffic Services Unit of the New Castle County Police Department for over two and one-half years. The Traffic Services Unit is primarily responsible for the investigation of automobile accidents involving serious injury or death. Officer Cassidy had specialized training in the area of accident reconstruction. He had been involved in the investigation of over 100 motor vehicle accidents which were related to driving while under the influence of alcohol.

Based upon his investigation of the scene, Officer Cassidy concluded that the accident involved only one vehicle. He further concluded that the pick-up truck had overturned and struck several boulders on the side of the road after the driver had failed to negotiate the left turn coming off the Bridge. Officer Cassidy then spoke to one of the civilian witnesses, who reiterated that: he had stopped at the accident scene, Maxwell had stated that he was the driver of the overturned truck, and Maxwell had replied affirmatively when asked if he had been drinking.

Officer Cassidy next inspected the overturned pick-up truck. He observed numerous beer containers inside and outside of the vehicle. Some of the beer containers

---

1. The Bridge is a one lane, wooden plank structure, approximately 139 feet in length. The road just north of the Bridge is marked with a warning sign which reads "One Lane Bridge". There is a rise in the Road as it approaches the Bridge from the northern side. As the Road leaves the Bridge on its southern side, it declines and curves to the left. There are several boulders located on the southern side of the Bridge, positioned a few feet to the right of the southbound lane.

were empty, while others were full. Officer Cassidy also noticed a strong odor of alcohol.

Officer Cassidy then directed Officer Nine to go to the hospital and obtain a sample of Maxwell's blood for alcohol testing. Officer Nine arrived at the hospital emergency room at 2:01 a.m. He located Maxwell, who identified himself as the driver of the overturned pick-up truck. Officer Nine observed that Maxwell's eyes appeared a little glassy. Officer Nine was unable to recall whether or not he smelled an odor of alcohol. Blood was drawn from Maxwell at 2:12 a.m. by a phlebotomist. The results of the blood test revealed a blood alcohol content exceeding one tenth of one percent. *See* 21 *Del.C.* § 4177.

## Procedural History

Maxwell was indicted by a Grand Jury in New Castle County for the offenses of Vehicular Homicide in the Second Degree (11 *Del.C.* § 630) and Driving Under the Influence (21 *Del.C.* § 4177). On January 23, 1992, a motion to suppress the blood test result was filed by Maxwell. On September 21, 1992, the Superior Court held an evidentiary hearing on the motion to suppress.

Maxwell's motion to suppress the results of the blood alcohol analysis was granted by the trial judge on the grounds that the police lacked probable cause to have the blood test performed. The trial court granted the State's request for reargument which was heard the following day. After considering the authority presented on reargument, the trial court affirmed its prior ruling suppressing the blood test results.

Pursuant to 10 *Del.C.* § 9902(b), a motion to dismiss was filed by the State, which certified that the evidence suppressed was essential to the prosecution of the charges in the indictment. The Superior Court granted the State's motion to dismiss without prejudice. The State then filed this appeal as of right pursuant to 10 *Del.C.* § 9902(c).

## Standard of Review

■ The facts on appeal are not in dispute. The State contends that the Superior Court erred in suppressing Maxwell's blood alcohol test results by applying an incorrect legal standard in its determination that, based upon the undisputed facts, the police lacked probable cause to take and test Maxwell's blood. Since the alleged error is a question of law, the Superior Court's legal determination is reviewed by this Court *de novo*. *Jarvis v. State*, Del. Supr., 600 A.2d 38, 40 (1991).

## Probable Cause Generally

Title 21, Section 2740 of the Delaware Code provides that a blood test to determine the presence of alcohol may be performed "when an officer has probable cause to believe [a] person was driving, operating or in physical control of a vehicle in violation of § 4177 ...," *inter alia*, while under the influence of alcohol. 21 *Del.C.* § 2740; *Seth v. State*, Del.Supr., 592 A.2d 436, 443–44 (1991). Chief Justice Marshall stated that the term probable cause connotes less evidence than that which would justify a conviction. *Locke v. United States*, 7 Cranch 339, 348, 3 L.Ed. 364 (1813). Thereafter, the United States Supreme Court has held that "[w]hile an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)).

Thus, probable cause is now measured, not by precise standards, but by the totality of the circumstances through a case by case review of " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. at 231, 103 S.Ct. at 2328 (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)). *See Hovington v. State*, Del.Supr., 616 A.2d

829, 833 (1992); *Thompson v. State*, Del. Supr., 539 A.2d 1052, 1055 (1988). Accordingly, "this Court has long recognized that '[p]robable cause is an elusive concept which avoids precise definition ... It lies somewhere between suspicion and sufficient evidence to convict.'" *Hovington v. State*, 616 A.2d at 833 (quoting *Thompson v. State*, 539 A.2d at 1055). *See also State v. Cochran*, Del.Supr., 372 A.2d 193, 195 (1977). Maxwell's case requires an application of the foregoing general legal precepts of a "probable cause" determination to the specific facts which were known to the police before Maxwell's blood was taken for testing.

*Superior Court Probable Cause Analysis*

██ In its decision to suppress evidence of the blood test results for lack of probable cause, the Superior Court reviewed the circumstances which preceded the taking of Maxwell's blood. The Superior Court first considered the fact that the accident involved only one vehicle. It then noted that, at the time Officer Cassidy sent Officer Nine to have Maxwell's blood taken and tested, Officer Cassidy "had not ruled out mechanical failure or speed" as a possible cause of the one vehicle accident. The Superior Court then considered the statements of the two civilian witnesses regarding Maxwell's acknowledgement to them that he had been drinking. However, the Superior Court discounted those statements by explaining that prior to drawing Maxwell's blood, the police had neither determined how much Maxwell had to drink nor how much time had elapsed between his consumption of alcohol and the accident.

The Superior Court also considered the fact that the overturned truck contained several empty and full beer containers and smelled of alcohol. The Superior Court noted that it was equally likely that the containers were opened, spilled and emptied as a result of the accident itself rather than by human consumption. Nevertheless, assuming arguendo, that it had been the occupants of the truck who had ingested the alcohol, the Superior Court stated that it was still unknown whether Maxwell had consumed any alcohol himself.

Finally, the Superior Court considered Officer Nine's observation of Maxwell at the hospital. The only physical condition Officer Nine recalled that might suggest intoxication was the glassy nature of Maxwell's eyes. The Superior Court found that the observation of glassy eyes was insignificant, because Maxwell had just been in an accident and had a cut over his nose.

The record reflects that the Superior Court considered the factual circumstances presented by the State. The record also reflects that the Superior Court considered possible innocent explanations for each of those factors. The Superior Court then ruled that, under the totality of the circumstances, given the possible innocent explanations for each of the facts presented, the State had not met its burden of establishing that the police had probable cause to take and test Maxwell's blood.

*State's Contention*

The State contends that the Superior Court erred, as a matter of law, in that it required the State to meet a burden of proof higher than was needed to establish probable cause. Specifically, the State argues that, by requiring the police officers to eliminate innocent explanations for the facts revealed during their investigation of the accident scene, the Superior Court effectively placed a burden upon the State to establish, beyond a reasonable doubt, that Maxwell was driving under the influence of alcohol before taking and testing his blood. Additionally, the State argues that the Superior Court committed legal error by focussing upon each fact independently, rather than viewing those facts under the totality of the circumstances.

*This Case*

*Probable Cause Established*

██ This Court has held that a police officer has probable cause to believe a defendant has violated 21 *Del.C.* § 4177 (Driving under the Influence of Alcohol) "when the officer possesses 'information which would warrant a reasonable man in

believing that [such] a crime has been committed.'" *Clendaniel v. Voshell,* Del. Supr., 562 A.2d 1167, 1170 (1989) (quoting *Garner v. State,* Del.Supr., 314 A.2d 908, 910 (1973)). *See also Thompson v. State,* 539 A.2d at 1056. A finding of probable cause does not require the police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or even to prove that guilt is more likely than not. *Jarvis v. State,* 600 A.2d at 43. To establish probable cause, the police are only required to present facts which suggest, when *those facts* are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime. *Jarvis v. State,* 600 A.2d at 42–43 (citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317). *Brinegar v. United States,* 338 U.S. at 175–76, 69 S.Ct. at 1310–11. The possibility that there may be a hypothetically innocent explanation for each of several facts revealed during the course of an investigation does not preclude a determination that probable cause exists for an arrest. *Jarvis v. State,* 600 A.2d at 41–42 (probable cause existed although several actions were subject to innocent explanations).

After a careful consideration of the record, we hold that the ruling of the Superior Court was erroneous as a matter of law. The Superior Court erred by discounting the probative value of each fact revealed by the police investigation at the accident scene, because the police investigation had not eliminated possible innocent explanations for the existence of each of those facts. Such an investigation, and the concomitant burden of proof which requiring such an investigation carries, is not a condition precedent to a finding of probable cause. *Jarvis v. State,* 600 A.2d at 42–43; *Hovington v. State,* 616 A.2d at 833; *Clendaniel v. Voshell,* 562 A.2d at 1170; *Thompson v. State,* 539 A.2d at 1055; *State v. Cochran,* 372 A.2d at 195; *Illinois v. Gates,* 462 U.S. at 231, 103 S.Ct. at 2328; *Brinegar v. United States,* 338 U.S. at 176, 69 S.Ct. at 1311.[2] "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information *[are] sufficient in themselves* to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. at 175–76, 69 S.Ct. at 1310–11 (emphasis added) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)).[3]

The record reflects that the police were summoned to the Bridge area at 12:14 a.m. Upon arrival at the accident scene, the police were informed by paramedics that all of the surviving victims, including the driver, had been taken to the hospital. The initial investigating officers spoke individually with two witnesses, who reported that Maxwell had told them that he was the driver of the vehicle and that he had been drinking.[4] One of the witnesses reported

---

**2.** Such a weighing analysis is more appropriate in applying the burden of proof standard which is used by the trier of fact to determine the substantive merits of guilt or innocence at a trial, i.e. "beyond a reasonable doubt." *United States v. Sanchez,* 689 F.2d 508, 515 (5th Cir. 1982). *See also United States v. Allison,* 953 F.2d 1346, 1350 (11th Cir.1992); *United States v. Ocampo,* 937 F.2d 485, 490 (9th Cir.1991); *United States v. Fooladi,* 703 F.2d 180, 184 (5th Cir.1983).

**3.** This now well-established legal standard for determining "probable cause" seeks to reconcile the right of each citizen to be protected from unfounded charges of crime and the needs of the police to have fair leeway in enforcing the law for the protection of the entire community. *Brinegar v. United States,* 338 U.S at 176, 69 S.Ct. at 1311.

Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice. *Id.*

**4.** In *Garner v. State,* Del.Supr., 314 A.2d 908 (1973), this Court held that probable cause can be established by reports of witnesses provided that the reports are sufficiently corroborated by other facts within the officer's knowledge.

that Maxwell had appeared dazed. Officer Cassidy, who was trained in accident reconstruction, determined that the accident involved only one vehicle and was caused by the driver losing control of the vehicle as he attempted to negotiate a turn after crossing the Bridge. Upon inspection of the overturned vehicle, the investigating officers noticed a strong odor of alcohol, as well as several empty and full containers of beer. One of the investigating officers was then dispatched from the accident scene with directions to proceed to the hospital for purposes of obtaining a blood alcohol test of Maxwell, the driver.

Any one of the foregoing facts, considered in isolation, may be insufficient to establish probable cause. However, the totality of the circumstances presented reveals that based upon their observations, their training, their experience, their investigation, and rational inferences drawn therefrom, the police possessed a quantum of trustworthy factual information, *"sufficient in themselves* to warrant a man of reasonable caution" to conclude that probable cause existed to believe Maxwell was driving under the influence of alcohol at the time of the accident. *Brinegar v. United States,* 338 U.S. at 175–76, 69 S.Ct. at 1310–11; *Jarvis v. State,* 600 A.2d at 43; *Clendaniel v. Voshell,* 562 A.2d at 1170. *See also Hovington v. State,* 616 A.2d 829; *Thompson v. State,* 539 A.2d 1052; *State v. Cochran,* 372 A.2d 193; *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317. *A fortiori,* the State had sufficient probable cause to take and test a sample of Maxwell's blood. 21 *Del.C.* § 2740.

## Conclusion

The judgment of the Superior Court is REVERSED. This matter is REMANDED for further proceedings consistent with this opinion.