# IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | * | Case No. 1308025330 |
| | * | Cr.A. No. 13090315 & 13090316 |
| v. | * | |
| | * | |
| SHAWN ELLIOTT, | * | |
| | * | |
| Defendant. | * | |

*Upon Defendant's Motion to Suppress*

Submitted: January 15, 2014

Motion Denied: February 2, 2014

Motion to Reargue: February 3, 2014

Submitted: February 12, 2014

Decision: April 1, 2014

*Defendant's Motion is Denied*

Zachary George, Esquire, Department of Justice, 102 West Water Street, Dover, Delaware, 19904, Deputy Attorney General for the State of Delaware.

John R. Garey, Esquire, 48 The Green, Dover, Delaware 19901, Attorney for the Defendant.

Reigle, J

The defendant, Shawn M. Elliott, was charged with Driving a Vehicle under the Influence of Alcohol ("DUI")[1] and Inattentive Driving.[2] Mr. Elliott, through counsel, moved to suppress two pieces of evidence collected after a police officer responded to the scene of a motor vehicle accident. A hearing was held on January 7, 2014. First, Mr. Elliott moved to suppress the results of a Portable Breath Test ("PBT") on the grounds that there was insufficient reason to collect this evidence from him. During the hearing, the State agreed that the PBT results should not be introduced at the hearing or trial, on other grounds.

Next, Mr. Elliott moved to suppress the results of the intoxilyzer test, which was conducted after he was removed from the scene on the grounds that the officer failed to have "probable cause" to seize him on the belief that he was driving under the influence of alcohol. The Court reserved decision and additional argument was submitted in writing by counsel on January 15, 2014. The Court denied the Motion to Suppress on February 2, 2014.

The matter was scheduled for trial on February 3, 2014. On that date, the defendant made an oral motion to reargue, which the Court heard and additional time was given for counsel to submit further written argument. The trial was continued. More letters were submitted on February 10, 2014 and February 12, 2014 by both counsel. This is the Court's final decision denying the Motion to Suppress.

**Facts**

Trooper Daniel Blomquist of the Delaware State Police Department testified at the suppression hearing that he had been an officer for three years. He testified that on

---

[1] Del.Code Ann. tit. 21 § 4177(a)(1)
[2] Del.Code Ann. tit. 21 § 4176(b).

1

August 30, 2013, sometime after 8:00 p.m., he responded to the scene of a motor vehicle accident near the intersection of South State Street and Rising Sun Road in Kent County, Delaware. Upon arrival, he saw both motor vehicles off of the roadway and both drivers. Mr. Elliott was standing next to his Jeep on his cellular phone and Ms. Davis was near her passenger vehicle. Trooper Blomquist identified both drivers during his testimony. He stated that he checked with Mr. Elliott and learned that he was not injured and moved on to Ms. Davis. She reported that Mr. Elliott had rear-ended her vehicle at a yield sign. She also told the officer that Mr. Elliott smelled of alcohol. Trooper Blomquist had not smelled alcohol during his initial contact with Mr. Elliott but returned to him and testified that he smelled a faint odor of alcohol while he stood twelve inches away. Upon inquiry by the officer, Mr. Elliott admitted to his consumption of alcohol, specifically scotch and water, during a time frame that began at five o'clock and ended prior to him driving the vehicle shortly before the accident, or around eight o'clock. He did not report an amount consumed. In addition, Trooper Blomquist testified that Mr. Elliott's appearance was orderly, his face and speech were normal, but that his eyes were bloodshot and glassy.

At this point, Trooper Blomquist had the defendant perform several field sobriety tests. First, he asked him to say the alphabet starting with the letter "E" and ending with the letter "P." Mr. Elliott performed this test correctly. Second, he asked him to count from the number "63" to the number "47" backwards. Mr. Elliott counted backward correctly until he skipped "48" and went to "49", at which time he went back and correctly stated "48" and "49." During cross-examination, Trooper Blomquist testified that he failed to complete the test perfectly, but admitted that it was the only mistake made during this test. He also testified that during his training, he was taught to look for

2

incorrect starts, stops and transposed numbers during a counting test. He agreed that Mr. Elliott made none of those mistakes; nevertheless he missed a number and he considered this one of the factors of impairment.

Trooper Blomquist testified that he was trained on the use of the horizontal gaze nystagmus test ("HGN") at the Delaware State Police Academy and that he was certified to perform such tests. He testified that Mr. Elliott exhibited no clues during this test that indicated impairment and that he passed this test. No explanation was provided by the Trooper for Mr. Elliott's lack of clues on the HGN test.

Trooper Blomquist had Mr. Elliott perform a walk and turn test. He used an imaginary line because there was no line painted on the roadway where the test was performed, which was South State Street. He could not recall if the road had a slope, but on cross-examination, agreed that there was a crest of a hill nearby. He asked Mr. Elliott to take nine steps, turn and walk nine steps back. Trooper Blomquist testified, that walking heel to toe, Mr. Elliott missed one step. He also testified that he turned the wrong direction and did not maintain his pivotal foot on the ground because he lost his balance. Trooper Blomquist characterized his performance on the test as a failure because, although he substantially completed it, he exhibited three out of eight clues.

Trooper Blomquist had Mr. Elliott perform a one leg stand by instructing him to hold his foot six inches above the ground and to count. He testified that Mr. Elliott did not keep his leg high enough and that he put his foot down early, but that he otherwise substantially completed this test.

On cross-examination, Trooper Blomquist characterized the one leg stand and walk and turn as good but not perfect, and the HGN tests as passed and he agreed that

3

these three tests were recommended by the National Highway Traffic Safety Association ("NHTSA").

## Arguments

Defense counsel argued that there was insufficient "probable cause" for Trooper Blomquist to take Mr. Elliott into custody. He asserted that there was insufficient basis for the officer to believe that the defendant was under the influence of alcohol while driving. He argued that the smell of alcohol was faint, the one leg stand and walk and turn tests were either passed or performed very close to correctly or administered improperly and that the HGN test resulted in no clues indicating impairment. He argued that under *State v. Pratt,* [3] an odor of alcohol on the breath of a motorist plus the mere existence of an accident did not provide probable cause to an officer. He also argued that the motor vehicle accident should not be considered because the officer did not testify that he considered this factor in his determination of probable cause.

The State responded there were sufficient factors for a finding of "probable cause" by the officer under the "totality of the circumstances" test set forth in *State v. Maxwell.* [4] The State submitted that Mr. Elliott was involved in a motor vehicle accident, had bloodshot and glassy eyes, an odor of alcohol, an admission of drinking alcohol and mistakes on the counting test. The State submitted that mistakes were made on the one leg stand and the walk and turn tests. The State also cited *State v. Bease* [5] to support its position that probable cause existed in a similar factual scenario.

---

[3] C.A. 84-07-0137 (J. Trader, August 15, 1984)(submitted as part of the re-argument).
[4] 624 A.2d. 926, 928 (Del. 1993).
[5] 884 A.2d. 496 (Del. 2005)

4

Additionally, the Court heard argument regarding the recent Delaware Supreme Court case, *Lefebvre v. State*,[6] which was familiar to both counsel.

### *Discussion*

An officer must possess "probable cause" that an offense of Driving under the Influence has been committed to remove a defendant from the scene to conduct further tests.[7] The determination of "probable cause" is a legal question for the Court to determine and it is not limited nor embellished by a police officer's testimony regarding the factors that he considered to form his belief that probable cause existed.[8]

A police officer has "probable cause" to believe a defendant has driven under the influence of alcohol when he possesses information which would warrant a reasonable man to believe that such a crime was committed. In order to establish probable cause, the State must present facts which viewed under the "totality of the circumstances" demonstrate that there is a fair probability that the defendant has committed a crime.[9]

In *Lefebvre*, the Court discussed an evaluation of field sobriety tests performed correctly by a defendant in a Driving under the Influence case in the overall "totality of the circumstances." The Court used a chronological approach and essentially held that the determination that probable cause existed could not be undone by later field sobriety tests that were successfully performed by the defendant.[10] The logic is essentially that once the milk is spilled; it cannot be undone.

The Trooper's report of no clues on the HGN test is perplexing. This is a test that is frequently used by police officers and touted by NITSA as a valid and verified test.

---

[6] 19 A.3d. 287 (Del. 2011).
[7] *See generally* Del.Code Ann. tit. 21 § 2740.
[8] *See generally Maxwell.*
[9] *State v. Maxwell* at 930 (*citations omitted*).
[10] *Lefebvre* at 295.

The defense argues that the lack of clues on the HGN test and the successfully completed field sobriety tests outweigh the other factors and under the "totality of the circumstances" test; there was no showing of probable cause. This is a good argument. However, it appears that under the holding in *Lefebvre*, the Court must go back and view the "totality of the circumstances" prior to the field sobriety tests to see if the officer possessed probable cause, *at that point*. If he did, then further field tests are essentially irrelevant for consideration in a probable cause hearing.[11]

In this case, the officer testified to several factors that he possessed, prior to the field sobriety tests. Trooper Blomquist observed a driver, who reportedly rear-ended another driver at a yield sign on a clear day, when it was not yet dark. He charged him with inattentive driving. In addition to the inattentive driving and resulting motor vehicle accident, he also possessed indicia of alcohol use by smell and appearance and admission of alcohol consumption shortly before driving. In *Bease*,[12] the Court held that an odor of alcohol, bloodshot and glassy eyes, rapid speech and a motor vehicle violation was sufficient to find "probable cause." In *Pratt*,[13] the Court held that an odor of alcohol and a motor vehicle accident which showed impaired driving was sufficient to find "probable cause." For these reasons, this Court finds that there was sufficient "probable cause" to believe that Mr. Elliott had driven under the influence of alcohol.

### Decision

The Court concludes that there was sufficient "probable cause" under the "totality of the circumstances" test for the police officer to seize the defendant for driving under the influence of alcohol prior to the completion of any field sobriety tests. Therefore, the

---

[11] *Lefebvre* at 295.
[12] *Bease* at 499.
[13] *Pratt* at 3.

field sobriety tests are not to be considered as a part of the "totality of the circumstances" analysis in determining probable cause, but may be used during trial. The defendant's motion to suppress any evidence as a result of his seizure by the officer, including the results of an intoxilyer, on the grounds of lack of probable cause to arrest is DENIED.

IT IS SO ORDERED.

The Honorable Anne Hartnett Reigle

7