# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

STATE OF DELAWARE        )
)
)
)
v.                          )      Case No.: 130612943
)
MICHAEL M. GIBBS,     )
)
Defendant.          )
)

**Upon Defendant's Motion to Suppress**

Submitted:  May 1, 2014
Decided:    June 24, 2014

**Defendant's Motion is GRANTED**

Kathleen A. Dickerson, Esquire, Department of Justice, 102 West Water Street, Dover, Delaware 19904, Deputy Attorney General for the State of Delaware

Alexander W. Funk, Esquire, Curley & Benton, LLC, 250 Beiser Boulevard, Suite 202, Dover, Delaware 19904, Attorney for the Defendant

**Reigle, J.**

On June 14, 2013, the defendant, Michael M. Gibbs, was charged with Driving a Vehicle Under the Influence of Alcohol ("DUI")[1] and Careless Driving.[2] The trial was scheduled to be held in this Court on January 7, 2014. Prior to trial, Mr. Gibbs' counsel filed a motion to suppress evidence. The suppression hearing was held on January 8, 2014. The first issue raised was whether the police officer had "probable cause" to arrest the defendant for driving under the influence of alcohol. During the hearing, the Court concluded that the officer did have "probable cause" to arrest Mr. Gibbs.[3] The second issue raised was whether the results of a blood draw should be suppressed because they were obtained by a warrantless search. The State argued that Mr. Gibbs consented to the search and therefore a warrant was not required. Mr. Gibbs' counsel argued that his client did not consent to the blood draw. After the hearing, the Court requested written submissions from counsel and reserved decision.[4] This is the Court's decision granting the motion to suppress the blood results because the State did not have a warrant for the search and failed to prove that Mr. Gibbs consented to the search.

### Facts

Corporal Raymond St. Clair of the Delaware State Police testified that on June 14, 2013, sometime after 1:35 a.m., he responded to the scene of a motorcycle accident near the intersection of East Lebanon Road and North Old Mill Road in Kent County, Delaware. Upon arrival, Cpl. St. Clair saw Mr. Gibbs laying face down, in the roadway, bleeding. The only vehicle at the scene was a motorcycle, found about 110 feet away. Mr. Gibbs was not wearing a

---

[1] Del. Code Ann. tit 21, § 4177.

[2] Del. Code Ann. tit 21, § 4176(a).

[3] *See generally State v Maxwell,* 624 A.2d 926 (Del. 1993).

[4] Letters were filed by the State on January 29, 2014 and by Mr. Gibbs' counsel on January 30, 2014. Before a decision was rendered, two decisions were issued by the Delaware Supreme Court and counsel was given additional time to submit updated arguments. Additional letters were submitted by the State on April 30, 2014 and by Mr. Gibbs' counsel on May 1, 2014.

helmet. Cpl. St. Clair assisted the paramedics because Mr. Gibbs was aggressive and attempting to stand. Cpl. St. Clair held Mr. Gibbs down while the paramedics placed him in a neck brace and strapped him to a backboard. During this initial contact, Cpl. St. Clair detected a strong odor of alcohol coming from Mr. Gibbs. Cpl. St. Clair described Mr. Gibbs' demeanor at the scene as confused. Cpl. St. Clair did not attempt to conduct field sobriety tests at the scene due to Mr. Gibbs' injuries. Mr. Gibbs was transported in an ambulance to the hospital.

When Cpl. St. Clair went to the trauma room at the hospital, he found Mr. Gibbs yelling at the hospital staff and aggressively refusing treatment. Mr. Gibbs continued to be confused as to what was happening despite efforts by hospital staff to calm him. Cpl. St. Clair testified that upon his second contact with Mr. Gibbs, he again detected a strong odor of alcohol. He also observed that Mr. Gibbs' eyes appeared glassy and bloodshot and that Mr. Gibbs had cuts and rash on his face. At this point, Cpl. St. Clair testified that he asked Mr. Gibbs if he would consent to a blood draw and Mr. Gibbs verbally responded "Yes, yea I'll do it."[5]

On cross-examination, Cpl. St. Clair agreed that Mr. Gibbs was bleeding heavily when he first observed him at the accident scene. He testified that in his Uniform Collision Report he characterized Mr. Gibbs as being "incapacitated." Cpl. St. Clair agreed that Mr. Gibbs' confused state could have been the result of intoxication or head trauma sustained in the accident. He testified that hospital security was called to hold down Mr. Gibbs because he continued to

---

[5] After this verbal response, Mr. Gibbs signed a hospital form consenting to the blood draw. Prior to the suppression hearing, defense counsel moved to prohibit the State from introducing the consent form pursuant to Court of Common Pleas Criminal Rule 16. Defense counsel argued he submitted a continuing discovery request to the State seeking to inspect or copy all documents in the possession of the State, material to the defendant's defense, or intended to be relied on as evidence in the State's case in chief. The State provided defense counsel with discovery materials prior to the hearing date; however, the State did not give defense counsel a copy of the consent form until the morning of the suppression hearing, which was the day after the scheduled trial. The State argued that it obtained possession of the consent form less than twelve hours before the hearing. The Court granted defense counsel's motion, prohibiting the State from introducing the consent form at the motion hearing or trial. The Court held the State was put on reasonable notice as to the existence of the document pursuant to the police report's reference to the fact that Mr. Gibbs consented to the blood draw. Additionally, the Court held that because the State wished to use the consent form as part of its case-in-chief, defense counsel was not provided adequate time to prepare by reviewing the document the morning of the hearing.

3

aggressively refuse medical treatment. Cpl. St. Clair clarified that at the hospital he told Mr. Gibbs he suspected him of driving under the influence of alcohol before asking Mr. Gibbs to consent to the blood draw. However, Cpl. St. Clair could not remember if he informed Mr. Gibbs that the results of the blood draw could be used against him in a criminal prosecution. He testified that Mr. Gibbs never admitted to consuming alcohol.

### *Arguments*

Mr. Gibbs' counsel argues that the State failed to prove that Mr. Gibbs consented to the warrantless blood draw. He contends that when the facts are viewed under the "totality of the circumstances," Mr. Gibbs did not consent. He further argues that Mr. Gibbs' head trauma left him in a state of confusion and disorientation, both at the scene and at the hospital, undermining Mr. Gibbs' capacity to consent.

The State counters that when asked by Cpl. St. Clair to consent to the blood draw, Mr. Gibbs responded affirmatively. The State further argues that there was no evidence that Mr. Gibbs had a medical condition that would render him incapable of consenting.

### *The Law*

The Delaware Constitution,[6] the United States Constitution[7] and a Delaware statute,[8] all protects an individual from an unreasonable search. A warrantless search by a police officer is per se unreasonable.[9]

A blood draw has recently been classified as a search by the United States Supreme Court.[10] Police must now obtain a warrant when they can reasonably obtain one without

---

[6] DEL. CONST. art. I, § 6.
[7] U.S. CONST. amend. IV.
[8] Del. Code Ann. tit. 11, § 2301.
[9] *McVaugh v. State*, 2014 WL 1117722 at *2 (Del. Supr.) *citing Cooke v. State*, 977 A.2d 803, 854 (Del. 2009). *See also Higgins* at 2.
[10] *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013).

4

undermining the efficacy of the search.[11] Exceptions to the warrant requirement remain, however, and an individual can consent to a search, or blood draw, and this eliminates a police officer's requirement to obtain a warrant.[12] If a police officer relies upon consent as an exception to the warrant requirement and conducts a search, however, the burden is upon the State to prove by a preponderance of the evidence that the defendant's consent was voluntary.[13] In order to determine whether consent was voluntarily, a court must examine the "totality of the circumstances" and consider the following factors:

(1) defendant's knowledge of the constitutional right to refuse consent;

(2) defendant's age, intelligence, education, and language ability;

(3) the degree to which the individual cooperates with police;

(4) the length of detention and the nature of questioning, including the use of physical punishment or other coercive police behavior.[14]

Delaware courts have also considered head injuries and intoxication as factors in determining whether a defendant's consent to a blood test was voluntary. It has been held that a defendant who had received a severe blow to his head in motor vehicle accident who had no recollection of the police officer's request to draw blood at the hospital was not capable of consenting to a blood draw.[15] It has also been held that a defendant who was sufficiently sober

---

[11] *McVaugh* at *2 *citing Missouri v. McNeely,* 133 S. Ct. 1552, 1561 (2013)
[12] *McVaugh* at *2 *citing Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973). *See also Higgins* at 2.
[13] *State v. Pratt,* 1984 WL 560777, (Del. Ct. Comm. Pl.) at *1. *See also State v. Fabrega,* Del. Super., ID No. 0804037667, Jurden, J. (Nov. 26, 2008)(ORDER).
[14] *McVaugh* at 2 *citing Schneckloth* at 226. *See also Higgins v. State* at 2.
[15] *Pratt* at *1 (*Motion decided on other grounds.*). *See also State v. Fabrega,* Del. Super., ID No. 0804037667, Jurden, J. (Nov. 26, 2008)(ORDER).

was capable of consent,[16] but a defendant who was intoxicated and exhausted and who did not sign a written consent form but acquiesced to a blood draw did not consent.[17]

## *Discussion*

In the instant case, the Court considered the following factors. First, Corporal St. Clair did not advise Mr. Gibbs of his right to refuse to consent to the blood draw. A consent form, which may have contained such information, was not admitted into evidence in this case. Therefore, the State is unable to show that Mr. Gibbs comprehended his right to refuse to take the blood test.

Second, although there was no evidence that Mr. Gibbs was incapacitated due to age, intelligence, education or language ability, there was significant testimony regarding his injuries and mental state. Mr. Gibbs sustained head injuries in a motorcycle accident while he was not wearing a helmet. Mr. Gibbs was found at the scene, laying face down in the roadway bleeding heavily. He had a rash and cuts on his face. Paramedics placed Mr. Gibbs in a neck brace, strapped him to a backboard and removed him in an ambulance. Cpl. St. Clair testified he did not administer field or breath tests on Mr. Gibbs at the scene because he felt Mr. Gibbs' injuries were too serious. Mr. Gibbs was confused and incoherent at the accident scene and at the hospital. Mr. Gibbs' confusion could have been a result of intoxication, however, such a factor is an appropriate consideration for the Court. Mr. Gibbs either had a head injury or he was intoxicated or both and this lead to a reduced mental capacity. The State cannot show that Mr. Gibbs had the mental capacity to consent.

Third, Mr. Gibbs was uncooperative with both Cpl. St. Clair and medical personnel at both the accident scene and the hospital. He tried to refuse medical treatment continuously

---

[16] *Higgins v. State,* WL 1323387, (Del. Supr. 2014) *citing United States v. Luciano,* 329 F.3d 1, 8 (1st Cir. 2003),

[17] *State v. Dempsey,* Del. Super., ID No. 1212011170, Carpenter, J. (August 30, 2013)(ORDER). *(Motion decided on other grounds.)*

6

throughout the evening and was forcibly restrained. This factor also showed the defendant's diminished mental capacity on the date of his arrest due to alcohol or injury.

Fourth, the Court must consider the possibility of coercive police tactics. Mr. Gibbs was not in custody when he was questioned and asked for his consent to a blood test. There was no evidence that he was pressured to consent to the test

Based upon the "totality of the circumstances," I find that Mr. Gibbs did not voluntarily consent to the blood draw.

### Decision

The defendant's motion to suppress the results of the blood test is GRANTED.

**IT IS SO ORDERED.**

The Honorable Anne Hartnett Reigle

7