# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE          )
                                     )
                                     )
          v.                    )
                                     )
                                     )     Cr. A. No. 1404011003
                                     )
CHAON CALHOUN,         )
                                     )
                                     )
        Defendant.        )

Marc C. Petrucci, Esquire
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State*

Richard J. Zemble, Esquire
4 East 8th Street
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION ON DEFENDANT'S MOTION TO SUPPRESS

**RENNIE, J.**

Defendant Chaon Calhoun ("Calhoun") stands charged with Driving Under the Influence of Alcohol ("DUI"), in violation of 21 *Del. C.* § 4177(a) following a stop on April 14, 2014. Calhoun moved to suppress the results of Standard Field Sobriety Tests ("SFTs") and a subsequent intoxilyzer test administered at the Wilmington Police Department ("WPD").[1] Calhoun contends that the decision to administer the SFTs at the WPD precinct rather than at the scene was improper. He argues that it does not fall within the narrow circumstances in which Delaware courts justify the transfer of a suspect from the scene to another location to perform SFTs. Due to this failing, Calhoun contends that the results of the SFTs and intoxilyzer test must be suppressed. The Court heard Calhoun's motion on July 21, 2015, took the matter under advisement, and ordered post-hearing briefing. This is the Court's Opinion on Calhoun's requested relief.

## FACTS

Corporal Ralph Schifano ("Cpl. Schifano") testified on behalf of the State.[2] On the evening of April 14, 2014, Cpl. Schifano was working a patrol shift when another officer made a call for assistance with a motor vehicle accident.[3] Although the accident had been assigned to another collision investigator, Cpl. Schifano responded and proceeded to the scene. When he arrived, Cpl. Schifano observed that other officers were on the scene and Calhoun was handcuffed and in the back of a police cruiser. Cpl. Schifano surveyed heavy damage to the front of the vehicle – a Ford Mustang convertible with Florida license plates. The front axle was

---

[1] Calhoun also sought suppression of the SFTs, alternatively arguing that the Wilmington Police should have given a Miranda warning before the SFTs were administered at the station. However, in his opening brief, Calhoun waived this argument based on the United States Supreme Court's ruling in *Pennsylvania v. Muniz*, 496 U.S. 582 (1990).

[2] Cpl. Schifano has been a police officer since 1989. His current role is as a Collision Investigator with the Special Operations Division of the Wilmington Police Department. His duties include responding to and investigating traffic collisions including "hit-and-runs" and alcohol-related accidents. The Court finds Cpl. Schifano to be a credible witness.

[3] This accident was at the 300 block of East 23rd Street in Wilmington, Delaware.

almost completely separated from the mustang. Further, the mustang had scratches on the front and sides.

After the investigating officer arrived, Cpl. Schifano left the scene to respond to a call relating to a second accident that had occurred earlier and was reported as a hit and run.[4] The scene of the second accident was five to six blocks away from the first reported accident. When Cpl. Schifano arrived, he spoke with the victim of the second accident. Her vehicle was parked and unattended. A neighbor advised her that a Ford Mustang convertible operated by a black male struck her car and fled.[5]

Next, Senior Corporal Joseph Dellose ("Sr. Cpl. Dellose") testified.[6] He stated that on April 14, 2014 at 9:48 p.m., a call came in that a hit and run accident involving a Ford Mustang occurred at the 500 block of West 26th Street in Wilmington, Delaware. Sr. Cpl. Dellose was assigned to investigate the incident. He arrived on the scene and spoke to the arresting officers.[7] They reported that they were in the area on routine patrol when they heard what sounded like a motor vehicle collision. The officers then observed a gray Ford Mustang with heavy front-end damage travelling westbound on West 26th Street and stopped the vehicle.

During Sr. Cpl. Dellose's investigation of the accident, he observed heavy front-end damage to the passenger side of the Ford Mustang. The front axle of the vehicle appeared to be broken. Also, two other vehicles on the block had sustained damage. Sr. Cpl. Dellose testified that the police officers had placed the driver of the Ford Mustang – later identified as Calhoun –

---

[4] The second collision was at the 500 block of West 26th Street in Wilmington, Delaware.

[5] As Cpl. Schifano interviewed the victim, the neighbor approached and explained what he had witnessed. He added that after the incident, he got in his car and followed the mustang. The neighbor observed it collide with several other parked cars. Shortly afterward, the mustang had been stopped by the police at the scene Cpl. Schifano had just left.

[6] Sr. Cpl. Dellose is a collision investigator with the Wilmington Police Department's patrol division. He has been an officer since July 6, 2004. Sr. Cpl. Dellose has been trained in collision investigations and DUI Investigation basics, including a twenty-four hour course with the Wilmington Police Academy. Further, Sr. Cpl. Dellose is certified to administer the intoxilyzer test. The Court finds Sr. Cpl. Dellose to be a credible witness.

[7] The arresting Officers were later identified as Officers Irwin and Verna of the Wilmington Police Department.

in the back of the police cruiser. Sr. Cpl. Dellose approached Calhoun to obtain his version of the accident. Sr. Cpl. Dellose testified that while standing three to four feet from Calhoun, he detected a strong odor of alcohol emanating from Calhoun's breath. Further, Calhoun's speech was slurred, his eyes were watery and glassy, and he appeared to be dazed. Calhoun stated to Sr. Cpl. Dellose that he was not involved in an accident.

The arresting officers transported Calhoun to WPD headquarters. At the police station, Sr. Cpl. Dellose met Calhoun for the purpose of administering the SFTs. Prior to administering the SFTs, Sr. Cpl. Dellose asked Calhoun if he had any physical impairment which might result in the tests giving a "false-positive."[8] Calhoun indicated that he had no such impairment. Sr. Cpl. Dellose administered the Horizontal Gaze Nystagmus ("HGN"), Walk-and-Turn ("WAT"), and One-Leg Stand ("OLS") tests, which were performed in the turnkey room of the police department.[9] Calhoun exhibited six out of six possible clues on the HGN and six out of six possible clues on the WAT. Sr. Cpl. Dellose testified that he attempted to administer the OLS, but Calhoun began to sway and lose his balance. After attempting the OLS three times, Sr. Cpl. Dellose discontinued the test because he was concerned that Calhoun might injure himself.

As a result of the numerous clues Sr. Cpl. Dellose observed during the SFTs, the strong odor of alcohol on Calhoun's breath, Calhoun's slurred speech, glassy and watery eyes, and his dazed state, Sr. Cpl. Dellose administered the intoxilyzer test.

---

[8] This includes any medication, illness, or injury which may impede an individual's ability to properly perform these tests when sober, thus diminishing such tests' efficacy as an indicator of alcohol induced impairment.

[9] The turnkey room has fluorescent lighting and solid, level black concrete.

## PARTIES' CONTENTIONS

Calhoun contends that the SFTs and subsequent intoxilyzer result should be suppressed because there were not any conditions present at the scene to justify his detention and transport for later testing.[10] Specifically, Calhoun argues that in the absence of (1) poor weather conditions; (2) heavy traffic; (3) officer safety concerns; or (4) a combative and uncooperative attitude of the suspect, the SFTs should have been performed at the scene. Based on the testimony offered by the State, none of the above circumstances were present, and Calhoun argues that the Wilmington Police did not have probable cause to transport him to WPD headquarters to administer the SFTs. Thus, Calhoun argues that the SFT results and intoxilyzer result should be suppressed.

In response, the State counters that although there is not sufficient evidence of any of the above conditions present at the scene, the SFTs should not be suppressed because the State had probable cause to arrest Calhoun for DUI prior to transporting him to WPD headquarters.

## DISCUSSION

On a motion to suppress, the State bears the burden of establishing that the challenged search or seizure comported with the rights guaranteed to Calhoun by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[11] The burden of proof on a motion to suppress is proof by a preponderance of the evidence.[12]

"When a person operates a motor vehicle in Delaware, he is deemed by statute to have given consent to chemical tests, including a test of the breath to determine the presence of alcohol or drugs."[13] "Chemical testing "may be required of a person when a police officer has

---

[10] Sr. Cpl. Dellose testified that at the scene of the accident, traffic was light and the weather was fair. Further, the arresting officers did not indicate any concerns for their safety. In fact, Calhoun was cooperative throughout the entire encounter.

[11] See State v. Matos, 2001 WL 1398585, at *2 (Del.Super. Aug. 6, 2001).

[12] Id.

[13] See Bease v. State, 884 A.2d 495, 497-98 (Del. 2005) (quoting 21 Del. C. § 2740(a)).

5

probable cause to believe that the person was driving while under the influence of alcohol or drugs."[14]

In the DUI context, probable cause exists when an officer has trustworthy and factual information, which when viewed under the totality of the circumstances warrants "a reasonable [person] in believing that" the defendant drove a motor vehicle under the influence of alcohol.[15] Further, probable cause to arrest for DUI "rests upon the observations of the arresting officer, which includes the driver's performance on field sobriety tests."[16]

### Standardized Field Sobriety Tests

Calhoun seeks to suppress each of the SFT results on the basis that Sr. Cpl. Dellose's administration of the SFTs at the police station rather than the scene of the crime went beyond those physical boundaries which were necessary and reasonable to investigate the alleged crime. The Court disagrees.

Delaware precedent dictates that the physical boundaries of an investigative detention may be extended only as far as is "necessary and reasonable."[17] According to *Williams v. Shahan* and its progeny, in the DUI context, it is necessary and reasonable to remove a suspect from the scene of the crime without probable cause for later testing where there exists: (1) poor weather conditions; (2) heavy traffic; (3) officer safety concerns; or (4) a combative and uncooperative attitude of the suspect at the scene of the crime.[18] In determining the propriety of removing a suspect from the scene for later testing where the above factors are not present, a court must first determine whether there was probable cause to arrest. If there is probable cause to arrest on

---

[14] *Id.* at 498.

[15] *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993); *Lefebvre* at 292 (quoting *Clendaniel v. Voshell*, 562 A.2d 1167, 1170 (Del. 1989) (internal quotations omitted)).

[16] *State v. Mulholland*, 2013 WL 3131642, at *4 (Del. Com. Pl. Jun. 14, 2013).

[17] *See Williams v. Shahan*, 1993 WL 81264 (Del. Super. Mar. 10, 1993).

[18] *See Williams*, 1993 WL 81264; *Perrera v. State*, 852 A.2d 908 (Del. 2004); *Dunlap v. State*, 812 A.2d 899 (Del. 2002).

suspicion of DUI independent of the SFTs, then removing a suspect from scene to conduct further testing does not run afoul of *Shahan* and its progeny.

Here, although there is testimony that on the night of April 14, 2014, the weather was fair; traffic was light; the road was well lit; and Calhoun was observed as cooperative with the Wilmington Police investigation, the evidence before the Court shows that Sr. Cpl. Dellose had probable cause to arrest Calhoun prior to his removal from the scene of the crime. Calhoun was initially stopped because the arresting officers heard what sounded like a motor vehicle accident, and, thereafter saw a Ford Mustang with heavy front-end damage, including an axle nearly disconnected from the vehicle. After the police stopped Calhoun, they quickly confirmed that at least two vehicles on the block had been hit, and had received a call of another hit and run accident within a five to six block proximity to the current scene, describing a vehicle matching Calhoun's.

Next, Sr. Cpl. Dellose approached Calhoun, who had been detained in the back of the police cruiser, to determine the cause of the collisions. Not only was the initial stop of Calhoun's motor vehicle "justified at its inception by reasonable suspicion of criminal activity," but Sr. Cpl. Dellose's approach to and inquiry of Calhoun was reasonably related to the purpose of the motor vehicle stop.[19] Sr. Cpl. Dellose testified that when he spoke with Calhoun, from a distance of three to four feet, he detected a strong odor of alcohol on Calhoun's breath, Calhoun's slurred speech, glassy and watery eyes, and his dazed state. At this point in the investigation, there existed a "quantum of trustworthy factual information, 'sufficient in themselves to warrant a man of reasonable caution' to conclude that probable cause existed" to believe that Calhoun was driving under the influence of alcohol at the time Sr. Cpl. Dellose questioned him.[20]

---

[19] *See Caldwell v. State*, 780 A.2d 1037, 1046 (Del. 2001).
[20] *Maxwell*, 624 A.2d 926, 931 (Del. 1993).

7

Accordingly, the totality of the circumstances was sufficient to establish probable cause to arrest Calhoun for suspicion of DUI.[21] Thus, his removal to the WPD headquarters to conduct the SFTs was proper. Calhoun's motion to suppress the SFTs is therefore **DENIED.**

**Intoxilyzer Test**

Calhoun also seeks to suppress the result of the intoxilyzer test. He contends that without the SFT results, Sr. Cpl. Dellose did not have probable cause to arrest him for DUI or to administer the intoxilyzer test. Calhoun's motion to suppress the intoxilyzer test is dependent upon the suppression of the SFTs and a finding of a lack of probable cause to arrest for DUI. Therefore, the Court's denial of Calhoun's motion to suppress the SFTs and a finding of probable cause independent of the SFTs necessarily nullifies his arguments on the suppression of the intoxilyzer test. Consequently, Calhoun's motion to suppress the intoxilyzer test result is **DENIED.**

## ORDER

After consideration of the testimony, evidence and arguments presented, Defendant Chaon Calhoun's Motion to Suppress the results of the standardized field sobriety tests and intoxilyzer test is **DENIED.**

**IT IS SO ORDERED this 31st day of August, 2015.**

Sheldon K. Rennie,
Judge

---

[21] *See Bease v. State*, 884 A.2d 495 (Del. 2005) (finding that the arresting officer had probable cause to arrest the defendant for DUI based on his commission of a traffic violation and the investigating officer's observations at the scene of the crime). *See also State v. Maxwell*, 624 A.2d 926, 930-31 (Del. 1993); *Higgins v. Shahan*, 1995 WL 108699 (Del. Super. Jan. 18, 1995); *Silverman v. Shahan*, 2002 WL 31999363 (Del.Com.Pl. Jan. 2, 2002).