# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      :

                              :     I.D. No. 1605012957

v.                       :     Kent County

                              :

LORI L. SAPP,             :

                              :

       Defendant.        :

Submitted: December 27, 2016
Decided: January 4, 2017

## ORDER

Upon Defendant's Motion to Suppress.
*Denied.*

D. Benjamin Snyder, Esquire, Department of Justice, Dover, Delaware; attorney for the State.

John R. Garey, Esquire, Dover, Delaware; attorney for Defendant.

WITHAM, R.J.

Before the Court is Defendant Lori L. Sapp's motion to suppress all of the evidence gathered as a result of a police encounter that led to her eventual indictment for felony Driving Under the Influence of Drugs (DUI). Because Ms. Sapp's arrest was supported by probable cause, her motion to suppress is ***denied.***

## FACTS

On May 18, 2016, Ms. Sapp contacted Corporal Foraker of Delaware State Police Troop 3 while he was on the roadside tending to a car crash near Route 13 and Voshells Mill Star Hill Road just outside of Camden, in Kent County, Delaware. Ms. Sapp pulled her car up behind Corporal Foraker's patrol car and approached the officer to report the theft of her purse.

Corporal Foraker directed Ms. Sapp that she could either wait in the parking lot of the nearby Waffle House for him to finish tending to the crash or she could return home and report the crime by phone. She decided to drive her car into the parking lot and wait for the officer. About thirty minutes later, the officer finished his crash investigation, drove his cruiser into the parking lot, and contacted Ms. Sapp. Ms. Sapp had been sitting in her car, but exited it when the officer parked his car.

Corporal Foraker had DUI training and was trained in the National Highway Traffic Safety Administration (NHTSA) standards governing DUI and field sobriety tests. He was not, however, qualified as a Drug Recognition Expert (DRE).

The officer observed Ms. Sapp to be impaired at the time of the contact in the parking lot. The officer initially noted that Ms. Sapp had difficulty keeping her balance and stumbled out of her car. She had glassy, glazed-over eyes and

2

constricted pupils. Her speech was slow and slurred and she seemed confused at times.

When the officer and Ms. Sapp spoke, Ms. Sapp gave a lengthy narrative of the events leading to the theft of her purse and her presence at the Waffle House parking lot. According to her narrative, the incident started when she was behind the ACME cleaning out her car. While throwing trash into the dumpster behind the ACME, she was approached by a man who offered to help her. The man asked her to drive him to Meadowbrook Acres. Ms. Sapp appeared to agree, yet then drove him to Royal Farms because the man had offered to buy her a drink with his EBT card. Ms. Sapp withdrew $160 from her bank account using the ATM at Royal Farms and then drove the man to Meadowbrook Acres. The man went into a house at Meadowbrook Acres and returned to her car. Ms. Sapp would not say where they went after leaving the house. Some time after leaving the house, she realized her purse was missing. With the man still in the car, she drove up to Corporal Foraker to report the theft. Corporal Foraker noted some confusion and inconsistencies in her recounting of the narrative, including confusion over which Royal Farms the two had visited.

After hearing Ms. Sapp's narrative, Corporal Foraker spoke with the man in the car. The man largely corroborated Ms. Sapp's story, but he would not give the officer any details about what they were doing while driving and he denied stealing the purse.

At some time during the interaction, Corporal Foraker asked Ms. Sapp about whether she was impaired. She stated to the officer that she was taking Adderall and

Xanax and that she had DUIs in the past. She also told the officer she may have taken an extra Xanax.

The officer then administered a number of tests on Ms. Sapp, including the alphabet test, the counting test, a Horizontal Gaze Nystagmus (HGN) test, the walk-and-turn test, the one-leg-stand test, and finally a Portable Breathalyzer Test (PBT). Ms. Sapp completed the alphabet test but not the counting test initially, although after multiple tries she was able to complete it. The officer observed four clues during the HGN test, indicating impairment. Ms. Sapp's performance on the walk-and-turn and the one-leg-stand tests also suggested impairment; Ms. Sapp scored six out of eight clues on the walk-and-turn test and three out of four clues on the one-leg-stand test. Her PBT resulted in a reading of 0.00.

After completing the tests, Corporal Foraker put Ms. Sapp in custody. She signed a voluntary consent form for a blood draw.[1]

## THE PARTIES' CONTENTIONS

Ms. Sapp seeks suppression of any and all evidence seized, alleging that the officer lacked reasonable suspicion to seize and detain Ms. Sapp and lacked probable cause to arrest her for Driving Under the Influence of Drugs.

The State contends that there was no stop and that the blood draw was a result of Ms. Sapp's voluntary consent. The State argues that the officer had probable cause to arrest her under the totality of the circumstances.

---

[1] While the State mentioned the results of the blood draw in its written response to Ms. Sapp's motion, it did not elicit any testimony at the hearing establishing what the results were.

4

## STANDARD OF REVIEW

"[A]ny evidence recovered or derived from an illegal search and seizure" must be excluded from evidence.[2] When a defendant moves to suppress evidence collected in a warrantless search, the State bears the burden of proving by a preponderance of the evidence "that the challenged police conduct comported with the rights guaranteed [to the defendant] by the United States Constitution, the Delaware Constitution and Delaware statutory law."[3]

## DISCUSSION

Ms. Sapp initiated the encounter with police and voluntarily consented to her participation in the eventual blood draw. The officer had a reasonable and articulable suspicion to ask Ms. Sapp to participate in field sobriety tests. The first time that the probable cause requirement was clearly implicated was when the officer administered a PBT and placed her under arrest. Those actions were supported by probable cause, and the motion to suppress is denied.

Although it occurred near her vehicle, Ms. Sapp was never stopped and there is no indication that the officer seized her prior to her arrest. A police encounter is not a seizure "simply because a police officer approaches an individual and asks a few questions."[4] Instead, "the police can be said to have seized an individual 'only if, in

---

[2] *Jones v. State*, 745 A.2d 856, 872–73 (Del. 1999).

[3] *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Nov. 30, 2001).

[4] *Robertson v. State*, 596 A.2d 1345, 1351 (Del. 1991) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

5

view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"[5] This case differs from the usual case where a person is seized by being pulled over or made to step outside the vehicle and submit to field sobriety testing. Here, Ms. Sapp initiated the encounter and exhibited signs of impairment while she was outside of her vehicle, of her own volition, and speaking with the officer to report a crime. A reasonable person in her situation would have believed she was free to leave, at least until she was asked to submit to the field sobriety tests.

When extending a citizen interaction beyond its initial purpose, "[a]n officer's reasonable and articulable suspicion that a defendant may have been driving while impaired will justify the continued detention necessary to conduct field sobriety testing."[6]

"Delaware law enforcement officers have statutory authority to make a warrantless arrest when a crime has been committed in their presence, or where they have 'reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed.'"[7] Our Supreme Court has interpreted "reasonable ground to believe" to mean probable cause, and more than mere suspicion.[8]

---

[5] *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (Stewart, J., concurring)).

[6] *State v. Laface*, No. 1502014686, 2016 WL 1637960, at *2 (Del. Super. Mar. 3, 2016).

[7] *Tolson v. State*, 900 A.2d 639, 642 (Del. 2006) (quoting 11 *Del. C.* § 1904(b)(1)).

[8] *Id.* at 642–43 (citing *Thompson v. State*, 539 A.2d 1052, 1055 (Del. 1988)).

Probable cause is determined "by the totality of the circumstances, as viewed by a reasonable police officer in light of his or her training and experience."[9] Probable cause requires that the police "present facts suggesting, in the totality of a circumstances, that a fair probability exists that the defendant has committed a crime."[10] It is not necessary for "police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or even to prove that guilt is more likely than not" in order for the Court to find probable cause.[11]

Here, both a reasonable and articulable suspicion *and* probable cause were present at nearly every stage of the investigation. This is not a close case. When Ms. Sapp approached the officer in the parking lot, he quickly came to a conclusion that Ms. Sapp was impaired, based on his personal observation of her slow and slurred speech, her glazed-over, glassy-eyed appearance, her poor balance, and confused behavior. Moreover, Ms. Sapp voluntarily stated that she was taking prescription medications including (at least possibly) an excess dose of Xanax. The officer had probable cause to administer a PBT and arrest her for DUI after hearing those statements, even before engaging in the additional tests. A fortiori, he had the reasonable and articulable suspicion necessary to perform the field sobriety tests.

When those initial pieces of evidence were combined with the poor

---

[9] *Miller v. State*, 4 A.3d 371, 373 (Del. 2010) (citing *State v. Maxwell*, 624 A.2d 926, 929–30 (Del. 1993)).

[10] *Id.* (citing *Jarvis v. State*, 600 A.2d 38, 42–43 (Del. 1991)).

[11] *Id.* at 373–74 (quoting *Maxwell*, 624 A.2d at 930).

performance on the pre-exit, walk-and-turn, and one-leg-stand tests,[12] there can be no doubt that the officer had facts that suggested a fair probability that Ms. Sapp had driven under the influence.[13] Accordingly, there was probable cause for her arrest. Any evidence springing from the investigation at the scene and Ms. Sapp's subsequent arrest will not be suppressed, including the consensual blood draw.

At the hearing on the motion to suppress, Ms. Sapp argued that the lack of a motor vehicle recording (MVR) entitled her to suppression. But it is well-established that police are under no "affirmative duty to video record all driving under the influence investigations."[14] The fact that Corporal Foraker did not make an MVR does not entitle Ms. Sapp to have the evidence suppressed, because he had no duty to make an MVR in the first place.[15]

Also at the hearing, Ms. Sapp argued that the fact that the officer was not a "Drug Recognition Expert" (DRE) meant that the evidence must be suppressed. The officer's DUI training, which encompassed impairment caused by both alcohol and

---

[12] Even if the Court does not consider Ms. Sapp's performance on the HGN test, there was more than enough evidence to establish probable cause.

[13] *E.g.*, *Miller*, 4 A.3d. at 374–75 (alcoholic odor from two or three feet away, glassy watery eyes, failed walk-and-turn and one-legged stand tests, and defendant's admission are sufficient to support probable cause for DUI); *Bease v. State*, 884 A.2d 495 (Del. 2005) (commission of a traffic offense, odor of alcohol, bloodshot glassy eyes, rapid speech, and defendant's admission to drinking were sufficient); *Maxwell*, 624 A.2d 926 (Del. 1993) (traffic accident, alcoholic odor, admitted alcohol consumption, and the defendant's dazed appearance constituted probable cause).

[14] *DeLoach v. State*, No. 1104015991, 2012 WL 2948188, (Del. Super. July 16, 2012) (citing *Wainer v. State*, 869 A.2d 328 (Table), 2005 WL 535010, at *2 (Del. Feb. 15, 2008)).

[15] Indeed, it is not clear where the cars were positioned, and the officer had no expectation when he entered the parking lot that this was a possible DUI investigation.

*State v. Lori L. Sapp*
I.D. No. 1605012957
January 4, 2017

drugs, and his patrol experience were sufficient for him to testify to the results of the field sobriety tests and his opinion of her impairment for the purposes of the hearing on this motion. Ms. Sapp has pointed to no case law to the contrary.

## CONCLUSION

Ms. Sapp's encounter with law enforcement on May 18, 2016 was the result of her own initiative in contacting a police officer. Further investigation was justified by the officer's reasonable and articulable suspicion that she had committed DUI. Her arrest was supported by probable cause and she consented to the seizure of a blood sample. Her motion to suppress is **DENIED**.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:   Prothonotary
xc:   D. Benjamin Snyder, Esquire
      John R. Garey, Esquire

9