# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| CRISTIAN MENDEZ-GARCIA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ID. No. 1903019680 |
| | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Submitted: May 8, 2020
Decided: July 24, 2020

*Upon Appeal from the Court of Common Pleas–*
**AFFIRMED**.

## OPINION

Thomas A. Foley, Esquire, Attorney for Appellant.
Isaac A. Rank, Deputy Attorney General, Attorney for Appellee.

**STREETT, J.**

## Introduction

Cristian Mendez-Garcia (the "Appellant") was arrested for driving under the influence ("DUI") by Corporal Maura Schultz ("Corporal Schultz") of the New Castle County Police Department. Before his trial in the Court of Common Pleas (the "Trial Court"), Appellant moved to suppress evidence, including his Intoxilyzer test results, obtained by the police. Appellant argued that there was insufficient probable cause to require him to submit to the Intoxilyzer test. The Trial Court denied Appellant's Motion to Suppress. At trial, the Trial Court found Appellant guilty of DUI. Appellant now appeals the Trial Court's decision to deny his Motion to Suppress, contending that the Trial Court erred in ruling that the State established probable cause. The State contends that the Trial Court did not err.

## Statement of Facts

On March 30, 2019, Corporal Schultz was dispatched to the scene of a vehicular accident in a residential area.[1] Appellant was present upon arrival. The officer's body camera was turned on and recorded her interactions with Appellant.

Appellant informed Corporal Schultz that his vehicle had struck the rear bumper of an unoccupied vehicle (which was parked on the other side of the street) as he backed out of a parking space.

---

[1] The accident occurred on Danbury Drive in the Wellington Woods development.

1

As to driving and vehicle documentation, Appellant's driver's license was suspended for a prior DUI and he was unable to produce a valid driver's license. He provided a Delaware State ID card, a valid insurance card, car registration, and paperwork from his prior DUI arrest.

Corporal Schultz detected an odor of alcohol emanating from Appellant and observed that Appellant's eyes were bloodshot. Appellant admitted that he had been drinking alcohol prior to the accident. Corporal Schultz noted that Appellant was cooperative and pleasant, his balance and demeanor appeared to be normal, and his clothing was orderly.

Corporal Schultz then conducted field tests on Appellant and noted six clues during the horizontal gaze nystagmus test ("HGN") and two clues during the walk-and-turn test. Corporal Schultz did not note any clues during Appellant's one-leg-stand test. Corporal Schultz also performed a PBT on Appellant.

Corporal Schultz then arrested Appellant and transported him to the New Castle County Police Headquarters to conduct an Intoxilyzer test. Before conducting the test, Corporal Schultz waited 25 minutes, she continuously observed Appellant during the period, she read Appellant his *Miranda* rights[2], Appellant waived those rights, and Corporal Schultz questioned Appellant about his whereabouts prior to the accident. Appellant then blew into the Intoxilyzer machine and the Intoxilyzer

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

results registered a .157 Blood Alcohol Count ("BAC"), which was higher than the maximum allowable BAC for operating a motor vehicle in Delaware (.08 BAC).[3] Corporal Schultz then cited Appellant for driving while under the influence of alcohol.

## Procedural History

On September 11, 2019, Appellant filed a Motion to Suppress all evidence, including the results of the Intoxilyzer test. Appellant contended that probable cause did not exist to take him into custody and that the field tests were unreliable and inadmissible.

On October 8, 2019, the Trial Court held a Suppression Hearing. Corporal Schultz testified for the State and the body camera video was admitted, without objection, into evidence.[4] Appellant did not testify, call any witnesses, or present any evidence.

Corporal Schultz testified that she has worked for the New Castle County Police Department for twelve years and that she currently works on patrol.[5] She stated that she completed forty hours of DUI detection training at the New Castle

---

[3] Appellant stipulated that Corporal Schultz had training and experience operating the Intoxilyzer machine and that the machine was properly calibrated. *See* Trial Transcript, at 7.

[4] Appellant's counsel stated that the body camera video was the "best evidence" and did not object to it being admitted and played during the hearing. Suppression Hearing Transcript, at 11.

[5] *Id.* at 7.

County Police Academy.[6] She also stated that she is ARIDE certified[7] and is a DUI instructor,[8] and had made approximately fifteen prior DUI-related arrests.[9]

Corporal Schultz testified that, on March 30, 2019, she began work at approximately 5:30 a.m.[10] She was called to the area of Danbury Drive in Wellington Woods for a vehicle collision investigation at approximately 6:30 a.m.[11] Upon arrival, she saw Appellant standing outside of his vehicle.[12] The officer observed damage to the rear bumper of Appellant's vehicle, damage to the passenger side of the other vehicle,[13] and pieces of Appellant's vehicle's light on the ground

---

[6] Corporal Schultz explained that her DUI training consisted of classroom training (watching videos and reviewing the standardized field sobriety tests), a wet lab (observing individuals who are on different levels of intoxication), completing the field sobriety tests with test subjects, and Intoxilyzer training. *Id*. 8-9.

[7] Although not elaborated upon by Corporal Schultz, Advanced Roadside Impaired Driving Enforcement (ARIDE) is a certificate program administered by the National Highway Traffic Safety Administration.

[8] *Id.* at 8.

[9] *Id*. at 14.

[10] *Id*. at 9.

[11] *Id*. at 32.

[12] *Id*. at 10.

[13] *Id*.

4

next to the other vehicle.[14]  Corporal Schultz also spoke to a witness who said that she heard the collision and then watched Appellant get out of his car.[15]

Corporal Schultz suspected that Appellant was under the influence because she detected an odor of alcohol "emanating from his person."[16]  She noticed that Appellant's "eyes were bloodshot"[17] and he was "very emotional [and] he seemed very upset."[18]  His clothes, however, were "very orderly".[19]

Corporal Schultz testified that she administered the HGN test on Appellant. Corporal Schultz explained the procedure for administering the HGN test.  She said that there are six clues for determining impairment, and that the presence of two clues indicates impairment.[20]  She testified that when she checked Appellant's eyes

---

[14] *Id.*

[15] *Id.* at 16.

[16] *Id.* at 14.

[17] *Id.*

[18] *Id.* at 15.

[19] *Id.*

[20] Corporal Schultz stated that, prior to conducting a HGN test, the officer looks at the subject's eyes and verifies that the pupils are of equal size and that there is no resting nystagmus.  The officer then twice checks whether the subject's pupils are tracking equally when going side to side starting with the left side.  She also testified that the officer then conducts the HGN test and checks for six validated clues.  She stated that the clues are equal tracking for each eye, distinct and sustained nystagmus at maximum for each eye, and onset of nystagmus prior to 45 degrees for each eye. *Id* at 18, 35-36.

for smooth pursuit, there was a clue in each eye.[21] She observed nystagmus onset before 45 degrees and vertical nystagmus in each of Appellant's eyes.[22] In total, she noted six clues.[23] Corporal Schultz testified that such a result on the HGN test indicates an intoxication level higher than the legal limit of .08 BAC.[24]

Corporal Schultz then testified that she administered the walk-and-turn test on Appellant. She stated that there are eight clues to look for during the walk-and-turn test.[25] She noted that Appellant displayed two clues during the walk-and-turn test – he started too soon and he missed a heel-to-toe.[26] Corporal Schultz testified that a finding of two clues on the walk-and-turn test indicates an intoxication level higher than the legal limit of .08 BAC.[27]

---

[21] *Id*. at 19-20. Corporal Schultz testified that each of Appellant's eyes displayed a stutter step when performing the smooth pursuit portion of the test.

[22] *Id.* at 20-21.

[23] *Id.*

[24] *Id*. at 22. Although the HGN test does not determine BAC level, the State asked Corporal Schultz "Did the results of the [HGN] test indicate to you that the defendant was above or below a .08 BAC?" Corporal Schultz responded, "Yes… [t]hat he was above a .08 BAC."

[25] *Id*. at 23-24. Corporal Schultz explained that the walk-and-turn test consists of an instruction stage and then a walking stage. During the instruction stage, she looks for whether the subject starts too soon or is unable to maintain his or her balance. The walking stage consists of heel-to-toe stepping, stepping off the line, use of arms for balance, too many steps, wrong turns, or stops while walking.

[26] *Id*. at 25.

[27] *Id*. at 26. Although the walk-and-turn test does not determine BAC level, the State asked Corporal Schulz, "What do two clues indicate to you regarding an individual's level of intoxication on the walk-and-turn test?" She responded, "That the defendant would be… intoxicated." The

Corporal Schultz testified that she then administered the one-legged test on Appellant.[28]  She stated that there are four clues to look for in the one-legged test. She observed zero clues during this test.[29]

Corporal Schultz also said that she administered the portable breathalyzer test ("PBT") on Appellant.[30]  She testified that the standard for administering this test is to wait at least fifteen minutes after initial contact with the subject before administering the test and that she waited the required fifteen minutes.[31]

Corporal Schultz testified that, after she completed her investigation at the scene of the accident, she arrested Appellant, transported him to the New Castle County Police Headquarters, and administered an Intoxilyzer test on him.[32]

The State played Corporal Schultz's body camera video of her investigation and interactions with Appellant.[33]  Corporal Schultz testified that she wore the body camera during her investigation, it recorded what she saw and heard, she reviewed

---

State followed up, "And what does that tell you regarding their BAC level?"  Corporal Schultz answered, "That it's above a .08."

[28] *Id.* at 27.

[29] *Id.*

[30] *Id.*

[31] *Id*. at 28.  Corporal Schultz did not testify as to the results of the PBT.

[32] *Id*. at 30.

[33] *Id.* at 12.

the video, and the video accurately reflected her recollection of the investigation and arrest.[34]

The Trial Court then watched the video.[35] It showed Corporal Schultz asking Appellant for his driver's license[36] and Appellant responding that he has a DUI pending and that his license was suspended.[37] Corporal Schultz then asked Appellant, "Have you been drinking this morning?"[38] Appellant responded, "Uh yes… it's my birthday tonight."[39] Appellant also explained that he hit the other vehicle as he was backing up[40] because he "accidently pulled out way too hard."[41]

---

[34] *Id.* at 11.

[35] In its Opinion, the Trial Court stated that "[t]hrough this video and audio footage, the Court observed the accident scene and Defendant's conduct." Trial Court's October 16, 2019 Opinion, at 3.

[36] State's Exhibit #1, at 1:22.

[37] *Id.* at 1:36-38.

[38] *Id*. at 1:40.

[39] *Id*. at 1:42.

[40] *Id*. at 4:32.

[41] *Id*. at 4:50.

The video then showed Corporal Schultz administering the field sobriety tests on Appellant.[42]  While administering the HGN test, Corporal Schultz instructed Appellant not to move his head.[43]  She had to repeat that instruction several times.[44]

The video also showed Appellant performing the heel-to-toe test, the walk-and turn test, the one-legged test, and undergoing the PBT.[45]  While waiting for the administration of the PBT test, Appellant informed Corporal Schultz that his parents were on vacation in Mexico[46] and they then conversed about parents and Mexico. After performing the PBT, Appellant twice asked the officer, "How bad is it?"[47]

The video recorded Corporal Schultz informing Appellant that he was going to be "coming" with her for "suspicion of DUI."[48]  Appellant responded, "there's no suspicion, I like, I admitted to --."[49]  Corporal Schultz then explained that she was taking Appellant to police headquarters for him to blow into an Intoxilyzer.[50]

---

[42] *Id*. at 5:28.

[43] *Id*. at 616.

[44] *Id*. at 6:21; 6:33-36; 6:50; 7:13; 8:07.

[45] *Id*. at 10:15-14:12.

[46] *Id*. at 16:06.

[47] *Id.* at 20:14; 20:50.

[48] *Id*. at 21:07.

[49] *Id*. at 21:10.

[50] *Id*. at 21:24.

Throughout the duration of the video, Appellant made numerous profanity-laced comments lamenting that he messed up, he should have stayed home, and he should have used Uber or Lyft instead of driving.[51]

On cross-examination, Corporal Schultz agreed that Appellant's speech was "good," he was "cooperative," and he "was pleasant to deal with."[52] She also acknowledged that a lack of sleep, toxins, or cigarette smoke could cause bloodshot eyes;[53] confirmed that the damage caused by the accident was "[f]airly minor;" noted that the street where the accident occurred was so narrow that two cars could not pass at the same time;[54] and said that Appellant's "balance was pretty much excellent."[55]

---

[51] The video recorded Appellant making comments that include:

"I really just fucked up my whole life, didn't I?" *Id*. at 7:05.

"I really just fucked up my life. I suck as a human. I should have just stayed home. I should have just stayed home… No, I fucked up. I know I did. And like my life is fucking ruined." *Id*. 7:39.

"I should have just Uber'd here." *Id.* at 8:28.

"I should have fucking just Lyft'd here." *Id*. at 17:36.

"I know I fucked up." *Id*. at 18:53.

[52] Suppression Hearing Transcript, at 33.

[53] *Id.* at 34

[54] *Id.*

[55] *Id*. at 35.

10

Corporal Schultz conceded that the body camera video did not capture Appellant's eyes during the HGN test[56] and that Appellant "was good" on the first nine steps of the heel-to-toe test[57] (however, she noted that Appellant failed to touch heel-to-toe on step 7/8 during the second nine steps).[58] Corporal Schultz also stated that Appellant started the heel-to-toe test too soon after she had instructed him not to move.[59] She confirmed that she observed no clues during the one-legged stand test.[60] In addition, she testified that, although she waited fifteen minutes to administer the PBT, she left Appellant and went back to her patrol car at some point while another officer observed Appellant.[61]

After Corporal Schultz's testimony, the Trial Court noted that there had been no testimony or records submitted that the PBT was calibrated and working properly as required by Delaware law.[62] The State conceded that it had not met this

---

[56] Corporal Schultz explained that she is short in stature and that, as a result, her body camera is not always positioned high enough to capture a person's eyes. *Id*. at 43.

[57] *Id*. at 38.

[58] *Id.*

[59] *Id.* at 39.

[60] *Id.*

[61] *Id*. at 39-40. The record does not reflect the name of the other officer.

[62] *Id*. at 47-48.

requirement.[63] The Trial Court also noted that Corporal Schultz did not testify as to her training or the NHTSA requirements concerning the walk-and-turn test and the one-legged stand test.[64]

On October 16, 2019, the Trial Court issued a written Opinion wherein it denied Appellant's Motion to Suppress.[65] In its finding of facts, the Trial Court found that Appellant was unable to produce his driver's license, admitted that his license was suspended due to a prior DUI, smelled of alcohol, had bloodshot eyes, and admitted to drinking alcohol on the day in question. The Trial Court also found that Appellant "admitted to backing up too quickly and striking a parked car."[66] Additionally, it found that Appellant "made statements using expletive language describing how bad he messed up; that he should have taken an Uber or Lyft, and that he ruined his life."[67] The court also noted that Appellant had difficulty following instructions during the HGN test.[68]

---

[63] *Id.*

[64] *Id.* at 51.

[65] Trial Court's October 16, 2019 Opinion.

[66] *Id.* at 3.

[67] *Id.*

[68] In its fact-finding section, the Trial Court noted that during the administration of the HGN test Appellant continued to speak and repeatedly moved his head after Corporal Schultz repeatedly told him to remain silent and still. *Id.* at 3. Although the Trial Court disregarded the results of the HGN test, it stated that Appellant's non-cooperative conduct during the administration of the HGN

12

The Trial Court, however, excluded the field sobriety tests and the PBT based on the State's failure to present evidence that those tests were administered in compliance with the NHTSA standards[69] and failure to lay the proper foundation to establish that the PBT machine was calibrated and that Corporal Schultz was properly trained on its operation.[70]

Nevertheless, the Trial Court found probable cause because it "need not rely on the validity of the field sobriety tests in making its determination regarding the existence of probable cause."[71] The Trial Court held that probable cause existed based on Corporal Schultz's observations that:

> (1) Defendant was driving a motor vehicle under a suspended license and while doing so struck a parked car; (2) Defendant was unable to provide a valid driver's license to Corporal Shultz [sic]; (3) Defendant admitted to Corporal Schultz he was drinking alcohol; (4) Corporal Shultz [sic] observed that Defendant smelled of alcohol; (5) Corporal Shultz [sic] observed Defendant's eyes were bloodshot. In addition, Defendant's inability to cooperate with Corporal Shultz's [sic] administration of the HGN test, Defendant's nervous chatter and numerous quasi-admissions weigh against Defendant in determining probable cause under the totality of the circumstances. Here, there was substantial basis for Corporal Shultz [sic] to conclude that probable cause existed to effectuate an arrest.[72]

---

test weighed against Appellant in a determination of probable cause under the totality of the circumstances. *Id*. at 10.

[69] *Id*. at 7-9.

[70] *Id.* at 8-9.

[71] *Id*. at 9.

[72] *Id.* at 10, citing *Bease v. State*, 884 A.2d 495, 500 (Del. Sept. 29, 2005).

On January 27, 2020, a trial was held and the Trial Court convicted Appellant. Corporal Schultz again testified for the State. Appellant did not testify or call any witnesses.

At trial, Appellant did not contest that he operated a motor vehicle at .157 BAC.[73] Also, Appellant stipulated, and Corporal Schultz testified, as to Corporal Schultz's training and experience on the Intoxilyzer machine, the Intoxilyzer's calibration records, the administration of the Intoxilyzer test, the results of the test, and Appellant's .157 BAC.[74]

The Trial Court noted that Corporal Schultz was the only fact witness and that there were "no credibility issues with Corporal Schultz, and in fact, her testimony was largely confirmed by her body-worn camera."[75]

On January 30, 2020, a few days later, Appellant filed his Notice of Appeal with this Court.

On March 25, 2020, Appellant filed his Opening Brief.

On April 23, 2020, the State filed its Answering Brief.

On May 7, 2020, Appellant filed his Reply Brief.

---

[73] Trial Transcript, at 3-4.

[74] *Id*. at 7-8.

[75] *Id*. at 19.

## The Parties' Contentions

Appellant asserts that the Trial Court's determination of probable cause was "unsupported by the totality of the circumstances."[76] Appellant contends that he was in command of his actions, his quasi-admissions were ambiguous, and he was cooperative.

Appellant asserts that the totality of the circumstance reflect that he "had no difficulty in presenting his documents to Corporal Schultz when she first approached him;" "he was not confused as to what documents he provided;" "he did [not] fumble or show a lack of dexterity;" and he "volunteered that he had a prior DUI and was still suspended."[77] In addition, Appellant states that he "further volunteered that he had a State I.D. card which he provided to Corporal Schultz, along with his valid insurance card and car registration plus the paperwork from his prior DUI arrest."[78]

Moreover, Appellant argues, although Corporal Schultz's body camera recorded Appellant's admission that he had been drinking, there was "no testimony that [Appellant] admitted drinking alcohol"[79] and that although the officer "testified that she observed an odor of alcohol emanating from [Appellant's] person, she did

---

[76] Appellant's Opening Brief, at 7.

[77] *Id.* at 7-8.

[78] *Id.* at 8.

[79] *Id.*

15

not testify that the odor was from his breath."[80]  Appellant further contends that there was no allegation that his eyes were glassy, watery, or dazed, his bloodshot eyes do not appear to be extreme on the body camera footage, and the incident occurred in the early morning.

Additionally, Appellant disputes the conclusion that he was unable to cooperate with Corporal Schultz's administration of the HGN test because the finding was based merely on Corporal Schultz's "gently instructing [Appellant] to keep his head still while he tracked her pen with his eyes [and that] [h]is head barely moved on those occasions."[81]  Furthermore, Appellant states that his "nervous chatter and numerous quasi-admissions" are no more indicative of an impairment than "any driver's proclamation that he/she is perfectly fine to drive despite overwhelming objective evidence to the contrary."[82]  Appellant writes that his ability to engage in a "very normal conversation" with Corporal Schultz (about his parents and Mexico) means that Appellant was not impaired.[83]

Appellant then cites a series of cases to support his claim that there was insufficient probable cause under the totality of the circumstances (*State v. Dale,*

---

[80] *Id*. (internal quotation marks removed).

[81] *Id.* at 8.

[82] *Id.* at 8-9.

[83] *Id*. at 9.

*State v. Sexton, and State v. Beheler*).[84]   Appellant writes that, in *State v. Dale*,[85] the Delaware Superior Court found insufficient probable cause where the defendant was stopped for speeding, had a moderate odor of alcohol, bloodshot eyes at 5:30 a.m., flunked the alphabet test, and was wearing his sweatshirt inside-out, was not engaging in erratic driving or fumbling, and was cooperative while exhibiting fair speech and normal face color.

Appellant also writes that in *State v. Sexton*,[86] the Delaware Court of Common Pleas "found insufficient probable cause in a two vehicle accident of undetermined cause, odor of alcohol, glassy eyes, and admission to drinking at an unspecified time, juxtaposed with the absence of any egregious driving, stumbling or trouble balancing, behavioral abnormalities, disheveled appearance, slurred speech or flushed face."[87]

Lastly, Appellant states that the Court of Common Pleas in *State v. Beheler*[88] declined to find probable cause based on the facts that the defendant "took a wide turn and drove on the wrong side of [the] road for 2/10 of a mile, exhibited a

---

[84] Citations are provided as discussed.

[85] *State v. Dale*, 2016 WL 691445 (Del. Super. Feb. 11, 2016).

[86] *State v. Sexton*, 2020 WL 755172 (Del. Com. Pl. Feb. 14, 2020).

[87] Appellant's Opening Brief, at 10.

[88] *State v. Beheler*, 2010 WL 2195978 (Del. Com. Pl. Apr. 22, 2010).

moderate odor of alcohol and watery eyes, slightly lost balance while exiting [the] car on a dark night and slanted road, [and] passed the alphabet, finger dexterity and counting backwards tests…"[89]

Appellant additionally argues that the totality of the circumstances does not constitute probable cause. He contends that the body camera video "dispels any notion" that he was "an impaired driver, notwithstanding that he bumped a parked car while backing out on [a] narrow residential street at dawn."[90] He contends that there was "no indication that his consumption of alcohol the night prior was a factor."[91] He also asserts that he exhibited "normal coherent speech; his eyes were barely bloodshot; he was in full command of his faculties; his clothing was orderly; his balance and coordination were normal; and he was pleasant and cooperative."[92] Appellant also notes that the Trial Court, after viewing the body camera video at the Suppression Hearing, commented that Appellant held his arms at his sides without swaying.

The State argues that the Trial Court did not err in denying Appellant's Motion to Suppress. The State asserts that past decisions of Delaware Courts have found

---

[89] Appellant's Opening Brief, at 10-11.

[90] *Id*. at 11.

[91] *Id*.

[92] *Id.*

18

that a defendant's involvement in a vehicular accident, a traffic violation, bloodshot eyes, odor of alcohol, admission to drinking, nervous behavior, failure to comply with instructions, and quasi-admissions were factors supportive of probable cause for a DUI arrest.[93] The State submits that these factors are present in the instant case and the Trial Court properly relied on these factors in its determination of probable cause.

In addition, the State argues that the Trial Court's finding was supported by sufficient evidence. The State explains that Appellant admitted that he was at fault in the accident, he admitted that he was driving while his license was suspended, Corporal Schultz testified that she detected the odor of alcohol emanating from Appellant, Appellant admitted that he had been drinking, he exhibited nervous chatter, he repeatedly made profanity-laced statements, he was unable to keep his head still, and he made quasi-admissions. The State contends that "there is no authority to support Appellant's claim that his balance and coordination observed on the video during the tests should negate a finding of probable cause."[94]

In his reply, Appellant argues that the factors cited by the State are "either not supported by the record or are de minimis, when juxtaposed against the totality of

---

[93] Citing *Rybicki v. State,* 119 A.3d 663, 669 (Del. July 20, 2015); *Lefebvre v. State*, A.3d 287, 293 (Del. Apr. 26, 2011); *Jenkins v. State*, 970 A.2d 154, 158-59 (Del. Apr. 6, 2009); *State v. Cohan*, 2013 WL 5494718, at *4 (Del. Com. Pl. Oct. 1, 2013).

[94] The State's Answer, at 17.

the circumstance that do not reflect impairment."[95]  Appellant contends that the accident was minor and occurred on a narrow residential street; there is no evidence that Appellant's decision to drive on a suspended license was linked to impaired poor decision-making; Appellant was transparent to Corporal Schultz that he had a prior DUI and that his license was suspended; Appellant provided his State I.D. card, insurance card, car registration, and prior DUI paperwork; Appellant's bloodshot eyes were "negligible"[96] and it was dawn; and Corporal Schultz acknowledged that bloodshot eyes can be caused by reasons other than alcohol.

Moreover, Appellant maintains that Corporal Schultz did not specify that she detected alcohol odor from Appellant's breath (just from his person) and, because Appellant admitted to drinking "at some point prior to the accident, it would make sense that his person and clothing would emit an odor of alcohol."[97]  Appellant further states that "an odor of alcohol, by itself, is insufficient, particularly when the extent of consumption is unknown."[98]  He also argues that the record is unclear

---

[95] Appellant's Reply at 2.

[96] *Id.* at 3.

[97] *Id*. at 3.

[98] *Id*. Citing *Esham v. Voshell*, 1987 WL 8277 (Del. Super. Mar. 12, 1987); *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

whether Appellant's admission to drinking meant that it occurred shortly before the accident or hours earlier.

Concerning his nervous behavior, Appellant argues that it was minimal and pleasant in tone. He states that he was not fidgety, rambling, and was never off-topic. He says that he was "aware that he was detained, and aware of the neighborhood residents milling about and watching the police administer field tests."[99] Appellant asserts that the Court has held that it is not unusual for motorists to exhibit nervousness when confronted by a police officer.[100] Appellant also contends that the body camera video is not supportive of the Trial Court's finding that Appellant was unable to comply with Corporal Schultz's instructions and that the State has not identified which instruction Appellant failed to follow.

Lastly, Appellant states that his "quasi-admissions of poor judgment" are not relevant because those remarks were not supported by objective evidence, such as other indicators of impairment.[101] Appellant states that he "may have been unfairly harder on himself than necessary in an effort to curry favor with [Corporal] Schultz."[102]

---

[99] *Id*. at 4-5.

[100] *Id*. Citing *State v. Chandler*, 132 A.3d 133, 144-45 (Del. Super. 2015).

[101] Appellant's Reply Brief, at 6.

[102] *Id*.

## Standard of Review

Under 11 *Del. C.* § 5301(c) a defendant may appeal a Court of Common Pleas decision to this Court.[103] The role of this Court is to correct errors of law and to review the factual findings of the Trial Court to determine "if they are sufficiently supported by the record and are the product of an orderly and logical deductive process."[104] Errors of law will be reviewed de novo; findings of fact are given deference and reviewed for clear error.[105] "If substantial evidence exists for a finding of fact, this Court must accept that ruling, as it must not make its own factual conclusions, weigh evidence, or make credibility determinations."[106]

When reviewing a determination of probable cause, "the trial court's findings of historical fact [concerning the events leading up to the arrest] are reviewed under the deferential clearly erroneous standard, but its conclusion as to probable cause, or

---

[103] 11 *Del. C.* § 5301(c) states:

> From any order, rule, decision, judgment or sentence of the Court in a criminal action, the accused shall have the right of appeal to the Superior Court in and for the county wherein the information was filed as provided in § 28, article IV of the Constitution of the State. Such appeal to the Superior Court shall be reviewed on the record and shall not be tried de novo.

[104] *Burris v. Beneficial Delaware, INC.*, 2011 WL 2420423, at *1 (Del. Super. June 9, 2011).

[105] *Auwerda v. State*, 2017 WL 2729561, at *6 (Del. Super. June 19, 2017).

[106] *Klinedinst v. CACH, LLC*, 2015 WL 3429941, at 3 (Del. Super. May 22, 2015), citing *Fiori v. State,* 2004 WL 1284205, at *1 (Del. Super. May 26, 2004).

22

more specifically its application of the law of search and seizure to those historical facts, is considered *de novo*."[107]

## Discussion

"Probable cause is determined by the totality of the circumstances and requires a showing of a probability that criminal activity is occurring or has occurred."[108] The Delaware Supreme Court has held:

> Probable cause exists where the facts and circumstances within the police officer's knowledge, and of which the police officer had reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed.[109]

Furthermore, the State bears the burden of "establishing that there was probable cause of driving under the influence of alcohol" to require a DUI defendant to submit to an Intoxilyzer test.[110] To satisfy its burden, "the State must establish only the probability, and not a prima facie showing of criminal activity."[111] "Even

---

[107] *State v. Iyer*, 2011 WL 976480, at *6 (Del. Super. Feb. 23, 2011) (internal quotation marks removed). *See also Jenkins v. State*, 970 A.2d 154, 157 (Del. Apr. 6, 2009) ("In reviewing a trial court's decision on a motion to suppress, we evaluate the court's legal conclusions *de novo*. We review factual findings to determine whether the trial judge abused his or her discretion in determining whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous.") (internal quotation marks removed).

[108] *Bease v. State*, 884 A.2d 495, 498 (Del. 2005).

[109] *Id*.

[110] *Id.*

[111] *Iyer*, 2011 WL 976480, at *6 (internal quotation marks removed).

when any one fact, considered in isolation is insufficient, if, under the totality of the circumstances, the collective facts suggest a fair probability that the defendant has committed a crime, then the State has established probable cause."[112]

Upon thorough review of the record, this Court concludes that the Trial Court's finding of probable cause to subject Appellant to the Intoxilyzer test is proper. The Trial Court found that Appellant admitted to drinking,[113] smelled of alcohol,[114] had bloodshot eyes,[115] was unable to provide a valid driver's license,[116] caused a vehicular accident while driving on a suspended license,[117] and displayed

---

[112] *Id*. (internal brackets removed) (internal quotation marks removed). *See also State v. Maxwell*, 624 A.2d 926, 930 (Del. May 21, 1993) ("A finding of probable cause does not require the police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or even to prove that guilt is more likely than not."); *State v. Hughes*, 2003 WL 21213709, at *2 (Del. Super. May 6, 2003) ("Although the facts considered in isolation may be insufficient to establish probable cause, when viewing the facts in the totality of the circumstances it appears that the police possessed enough trustworthy information to warrant a man of reasonable caution to conclude that [the defendant] was driving under the influence...").

[113] Appellant states that Corporal Schultz asked him, "Have you been drinking this morning?" Appellant admits that he responded, "Yes… it's my birthday tonight." Appellant's Reply, at 4.

[114] Appellant concedes that "[b]ecause [he] admitted drinking at some point prior to the accident, it would make sense that his person and clothing would emit an odor of alcohol." *Id.* at 3.

[115] Appellant does not deny that his eyes were bloodshot but argues that it was "negligible." *Id*. at 3.

[116] Appellant admits that he informed Corporal Schultz that his driver's license was suspended for a prior DUI. Appellant's Opening Brief, at 7-8.

[117] Appellant admits that he informed Corporal Schultz that he was at fault in the accident. *Id*. at 2.

nervous behavior.[118]  The Trial Court also found that Appellant's numerous quasi-admissions[119] and difficulty in cooperating with Corporal Schultz weighed against Appellant in determining probable cause under the totality of the circumstances. (Additionally, a neighbor watched Appellant operate the offending vehicle).  Pursuit to Delaware case law, these factors were sufficient to establish probable cause to administer an Intoxilyzer test on Appellant.[120]

Furthermore, the Trial Court's factual findings are supported by substantial evidence.  The Trial Court based its findings on the testimony of Corporal Schultz and the body camera video that accurately reflected her recollection of the incident.  Appellant does not challenge the credibility of Corporal Schultz's testimony or the accuracy of the body-cam video.[121]

---

[118] Appellant concedes that he engaged in "nervous chatter," but he characterizes it as "minimal and pleasant in tone."  Appellant's Reply, at 4.

[119] Appellant acknowledges that he made "quasi-admissions of poor judgment" but he argues that he "may have been unfairly harder on himself than necessary in an effort to curry favor with Cpl. Schultz."  *Id*. at 6.

[120] *See State v. Maxwell*, 624 A.2d 926, 930-31 (Del. May 21, 1993) (In reversing and remanding, the Delaware Supreme Court held that two witnesses informing the police that the defendant admitted to drinking, one witness informing the police that the defendant appeared dazed, the defendant being involved in a single-vehicle accident, and the overturned vehicle having a strong odor of alcohol and several empty and full containers of beer was a sufficient set of facts to establish probable cause for the purposes of obtaining a blood alcohol test of the defendant.).

[121] In fact, in his appeal, Appellant is satisfied that the video accurately shows his interactions with Corporal Schultz.  Appellant writes that "[t]he body camera footage dispels any notion that [Appellant] was an impaired driver."  Appellant's Opening Brief, at 6.  He appears to assert, in an attempt to support his argument, that the body camera accurately recorded that Appellant maintained normal balance, exhibited normal coherent speech, was in full control of his faculties,

In *Bease v. State*, the Delaware Supreme Court found probable cause where the "record reflect[ed]" that the defendant in that case "spoke in a rapid manner [to the officer], smelled of alcohol, admitted that he consumed alcoholic beverages the night before, had bloodshot and glassy eyes, and had just committed a traffic violation by making an improper lane change in an abrupt manner."[122] The Delaware Supreme Court held that, based upon these facts, there existed "a quantum of trustworthy factual information, 'sufficient in themselves to warrant a man of reasonable caution' to conclude that probable cause existed to believe that [the defendant] was driving under the influence of alcohol at the time [the officer] stopped him."[123]

In *State v. Iyer*, a cooperative defendant's watery and glassy eyes, moderate odor of alcohol, involvement in a single-vehicle accident, and admission to drinking hours before the accident established probable cause.[124] This Court held that these

---

and was pleasant and cooperative. *Id.* at 6. He also states that the video shows that his bloodshot eyes were "negligible." *Id.* at 3.

[122] *Bease v. State*, 884 A.2d 495, 499-500 (Del. Sept. 29, 2005). Although Appellant notes that the defendant in *Bease* failed an additional test - the alphabet test, the Delaware Supreme Court wrote that "[i]n its analysis, the Superior Court considered: Bease's abrupt driving movement, the odor of alcohol on his breath, his glassy and bloodshot eyes, and his admission to having consumed beer or chardonnay the night before." *Id.* at 498. The Delaware Supreme Court then listed these factors in its holding that the record reflected sufficient evidence "to establish probable cause for administration of the intoxilyzer test…" *Id.*

[123] *Id* (internal quotation marks removed).

[124] *State v. Iyer*, 2011 WL 976480, at **1, 13 (Del. Super. Feb. 23, 2011).

26

facts were "sufficient in themselves to warrant a person of reasonable caution to believe that [the defendant] was driving under the influence of alcohol at the time of the accident."[125] This Court further stated that the totality of these circumstances "undoubtedly established a fair probability, as a matter of law, the [the defendant] was driving under the influence of alcohol separate and apart from the field tests and the PBT."[126]

Moreover, the cases cited by Appellant in support of this appeal are distinguishable from the instant case. In *State v. Dale*, this Court granted the defendant's motion to suppress when it found that a DUI defendant's "bloodshot eyes at 5:30 a.m.,…[an] inside out and backwards [shirt],… a moderate smell of alcohol", and failure to properly perform an alphabet test[127] were insufficient to

---

[125] *Id.* (original brackets removed).

[126] *Id.* (internal quotation marks removed).

[127] In *Dale*, the Court noted that the defendant failed to properly perform the alphabet test. The Court in *Dale* wrote that the defendant was asked by the officer to "say the alphabet starting with C and ending with P." *State v. Dale*, 2016 WL 691445, at *3 (Del. Super. Feb. 11, 2016). The defendant simply stated "C and P." *Id.* The Court concluded that the defendant "either misunderstood the instructions or failed the alphabet test" but that he "completed the number counting test with no issue." *Id.*

support a finding of probable cause.[128]  However, the Court noted that those facts were "close" to being sufficient for a finding of probable cause.[129]

Here, as previously discussed, in addition to having bloodshot eyes and smelling of alcohol, Appellant readily admitted to drinking on the morning of the incident, admitted to causing a vehicle accident, was driving on a suspended license, was unable to produce a driver's license,[130] made incriminating statements, and engaged in nervous chatter.

In *State v. Sexton*,[131] the Court of Common Pleas found that probable cause did not exist when there was a two-vehicle accident of undetermined cause, an odor of alcohol, glassy eyes, and admission to drinking at an unspecified time.[132] Particularly important to the court in *Sexton* was the fact that there were two parties involved in the accident and there was no evidence that the defendant "caused the accident or otherwise committed a traffic offense."[133]  In addition, the court noted

---

[128] In the fact section, the Court in *Dale* noted that the defendant initially denied drinking but "later stated that he had been." *Id*. at *1. When discussing whether the facts were sufficient for probable cause, the Court did not include the defendant's admission to drinking.

[129] *Id*. at *4.

[130] In *Dale*, the Court noted that the defendant was able to produce his driver's license and he was not driving erratically or aggressively. *Id*. at *1.

[131] *State v. Sexton*, 2020 WL 755172, at *4 (Del. Comm. Pl. Feb. 14, 2020).

[132] *Id.*

[133] *Id*. at *3.

28

that there was no evidence indicating the proximity in time of the drinking to the accident, and the court found that "[a]bsent a time marker of when alcohol was consumed, no rational inference can be drawn regarding intoxication."[134]

In contrast, Appellant was involved in a single-vehicle accident where he admitted fault. Moreover, he committed a traffic offense at the time of the accident (driving with a suspended license). Furthermore, Appellant's disclosure that he had been drinking on the morning of the incident served as a time marker as to when alcohol was consumed, which allowed for a rational inference regarding Appellant's intoxication.[135]

Similarly, *State v. Beheler* is also not helpful to Appellant's case.[136] In *Beheler*, the Court of Common Pleas held that the moderate smell of alcohol on the breath, watery eyes, and admission of alcohol consumption was insufficient to establish probable cause.[137] However, the factors in the instant case, as discussed above, are significantly more than those presented in *Beheler*.[138]

---

[134] *Id.*

[135] *See* footnote 113.

[136] *State v. Beheler*, 2010 WL 2195978, at *4 (Del. Comm. Pl. Apr. 22, 2010).

[137] The Court of Common Pleas also noted that the defendant was not driving erratically and that the defendant's loss of balance while exiting his truck occurred when it was dark and that the road was slanted and the truck was elevated. *Id.*

[138] Appellant caused a vehicle accident, drove on a suspended license, behaved nervously, and made incriminating statements.

In addition, Appellant's contention that the totality of the evidence precludes a determination of probable cause is without merit. Appellant appears to argue that his presentation of relevant documents without difficulty; appropriateness of the documents provided; volunteering his driving transgressions; his ability to engage in a "normal conversation";[139] the absence of disheveled clothing; normal balance and coordination; and a non-combative demeanor should tip the balance against a finding of probable cause."[140]

However, the determination as to the existence of probable cause must be based on a consideration of the totality of the circumstances and not only on the facts that are favorable to a defendant.[141] In *Lefebvre v. State*, the Delaware Supreme Court held that probable cause existed under the totality of the circumstances despite the fact that the defendant had fair speech and passed the field sobriety tests.[142] Similarly, in *Slaney v. State*, this Court rejected a DUI defendant's argument that "probable cause would not have been established" had the trial court considered the defendant's "cognitive clarity, demeanor, speech fluency, memory, balance,

---

[139] Appellant's Opening Brief, at 7-9.

[140] *Id*. at 11.

[141] *Miller v. State*, 4 A.3d 371, 373-74 (Del. June 7, 2010).

[142] *Lefebvre v. State*, 19 A.3d 287 (Del. Apr. 26, 2011).

explanation for consumption of alcohol [and] circumstances of consumption."[143] The Court in *Slaney* held that the fact that the defendant "was cognitively aware of the situation and able to balance does not negate a finding of probable cause."[144]

So too, here, in light of the numerous facts indicating that Appellant was driving under the influence, other facts that arguably show that Appellant had a degree of control over his faculties and was aware of the situation do not negate probable cause.

Lastly, Appellant's suggestion that there could have been innocent explanations for some of the facts considered to establish probable cause (including bloodshot eyes,[145] the single-vehicle accident,[146] and his quasi-admissions)[147] does not negate probable cause.[148] The law is clear that "[h]ypothetically innocent explanations for facts learned during an investigation do not preclude a finding of

---

[143] *Slaney v. State*, 2016 WL 5946485, at *6 (Del. Super. Oct. 7, 2016).

[144] *Id*.

[145] It was early in the morning.

[146] The street was narrow.

[147] Appellant was hard on himself to curry favor with Corporal Schultz.

[148] *State v. Hughes*, 2003 WL 21213709, at *2 (Del. Super. May 6, 2003) ("[T]he fact that there may be an innocent explanation for some of those facts… does not negate the officers finding of probable cause.").

probable cause."[149]   As such, the officer was not required to "rule out potentially innocent, alternative explanations" for Appellant's incriminating conduct and appearance before subjecting Appellant to the Intoxilyzer test.[150]

## Conclusion

Accordingly, for the foregoing reasons, the decision of the Court of Common Pleas is **AFFIRMED.**

*/s/Diane Clarke Streett*
Diane Clarke Streett, Judge

---

[149] *Stafford v. State*, 59 A.3d 1223, 1229 (Del. Dec. 4, 2012); *Lefebvre v. State*, 19 A.3d 287, 293 (Del. Apr. 26, 2011) ("That hypothetically innocent explanations may exist for facts learned during an investigation does not preclude a finding of probable cause."); *State v. Iyer*, 2011 WL 976480, at *13 (Del. Super. Ct. Feb. 23, 2011) ("The police investigation of an automobile accident is not required to eliminate possible innocent explanations for facts that militate towards the existence of probable cause.").

[150] *Rybicki v. State*, 119 A.3d 663, 671 (Del. July 20, 2015).